## HANCOCK *v.* THE STATE.

1. The special local option act for Douglas county, approved September 4, 1885, does not undertake to affect the operation therein of the domestic-wine act of 1877, and therefore is not, when viewed with reference to that act, in violation of the constitutional provision which forbids any special legislation in a case for which provision has been made by an existing general law.

2. When a part of an act is unconstitutional and another part is constitutional, the latter may be upheld if so doing will " correspond with the main purpose which the legislature sought to accomplish," and if after striking the objectionable part enough will remain to effectuate that purpose. Thus where the title of an act is " to prohibit the sale of spirituous, vinous, malt, or other intoxicating liquors " in a named county, and the body of the act in addition to forbidding the sale of such liquors also undertakes to forbid the giving away thereof and also of fruits in alcohol, which, if taken excessively, will produce intoxication, the provisions of the act relating to " giving away " any of the articles and to selling the fruits may be rejected as matters not embraced in the title, but the other provisions may be allowed to stand.

3. An indictment for the sale of spirituous and other liquors may charge collectively the sale of several different kinds of liquors, and need not state to whom the same were sold.

4. The act of 1877 referred to above did not place domestic wines on the " free list," or authorize the sale of the same by any one other than the manufacturer thereof.

5. An indictment founded on the act first above mentioned and charging generally the sale of wines need not negative that the same were " domestic."

6. The demurrer in the present case did not present the point that the indictment ought to have shown on its face that the accused was not a producer of domestic wines, or that in selling wines he did so by the drink in a place where a sale of this character is forbidden by the statute.

7. The State may prove the commission of the offense charged in an indictment at any time within the statute of limitations ; and this is so though similar indictments for like offenses, covering, wholly or partially, the same period of time, are pending against the accused.

8. Refusing to quash an indictment is not cause for a new trial.

9. There was in this case no error in refusing to grant a continuance; nor in charging the jury ; nor in overruling a motion to require an election by the State as demanded by the accused. The evidence warranted the verdict, and the grounds of the motion for a new trial founded on newly discovered evidence are without merit.

Submitted November 19, — Decided December 19, 1901.

Indictment for selling liquor.   Before Judge Janes.   Douglas superior court.   October 8, 1901.

*J. S. James*, for plaintiff in error.
*W. T. Roberts, solicitor-general*, contra.

LUMPKIN, P. J. , The plaintiff in error was indicted under the special local option act for Douglas county, approved September 4, 1885. See Acts of 1884–5, p. 531. The indictment charged that on the 15th day of May, 1901, the accused "did unlawfully sell, vend, and barter spirituous, vinous, malt, and other intoxicating liquors, wines, and intoxicating medicated bitters, and fruits in alcohol, which, if taken or drank to excess, will produce intoxication." Before pleading to the merits the accused demurred to the indictment on various grounds. The demurrer was overruled and a verdict of guilty was returned. In the bill of exceptions error is assigned upon the overruling of the demurrer and of a motion for a new trial. We will first deal with the demurrer, and then dispose of the motion for a new trial.

1. Does this act violate that clause of the constitution which forbids special legislation in a case provided for by an existing general law? The contention, briefly stated, is that the act has this infirmity because it seeks to modify, as to Douglas county, the provisions of the general domestic-wine act of 1877. Acts of 1877, p. 33. This point is not well taken. The 7th section of the special act provides that if any election held thereunder shall result in favor of prohibition, it shall not, after the act under a proclamation to be made by the ordinary shall become operative, be lawful "for any person or persons whomsoever to sell, vend, or barter, give away at his or her place of business or other public place in any manner whatsoever, in the county of Douglas, any spirituous, vinous, malt, or other intoxicating liquors, wines, or medicated bitters, or fruits in alcohol, which if taken or drank to excess will produce intoxication," etc. Subsequently to the passage of the act an election was had which resulted in favor of prohibition, and this fact was duly proclaimed. It will be observed that, under the sweeping provisions embraced in the language quoted above, it would be unlawful to sell in Douglas county intoxicating wines of any description. The 8th section of the act provides, however, that it shall "not be construed to apply to domestic wines and cider sold or offered for sale by the producer; provided the same be not sold in a saloon or barroom or any other regular public place of business by the drink." Accordingly it is not, under this act, unlawful for a producer of domestic wines to sell the same in that county, unless he does so by the drink in a saloon or barroom or other regular pub-

lic place of business.    It will be plainly seen that, giving to the provisions of the special act full force and effect, they do not affect the operation of the general wine act in Douglas county.    Under it "any person who shall manufacture or cause to be manufactured" domestic wines may lawfully sell the same in Douglas county "in quantities not less than one quart."    Under the special act the producer may lawfully do the same thing, though he may not sell by the drink in designated places.    The general act does not attempt to deal with sales of domestic wines by the drink, and therefore the special act in so doing touches nothing for which provivision is made in the general act.    We hold that the word "producer," as used in the special act, is identical in meaning with "manufacturer;" and the latter term, of course, applies both to him who actually makes the wine and to him who causes it to be made.    The decision in *Papworth* v. *State*, 103 *Ga.* 36, is palpably inapplicable to the case in hand.

2. One ground of the demurrer reads as follows: "The act of 1885 is void because there is matter in the body of the act that is not referred to or indicated in the title thereof, to wit: The body of the act makes it penal to give away at his place of business or other public place in any manner whatever, in the county of Douglas, any of the articles mentioned in section 7 of said act, and further it provides and makes penal in said section to vend, sell, or barter, or give away, as above stated, wines or medicated bitters or fruits in alcohol, which, if taken or drank to excess, will produce intoxication ; and if the remaining part of said section should be held good, that part mentioned in this ground of demurrer must fall, because it is not indicated in the title of said act, and is matter not covered by the title thereof."    As we understand this ground of the demurrer, it was thereby intended to make the point that the whole act is void, because, although there is nothing in the title with respect to giving away anything, the body of the act undertakes to make penal the giving away of the liquors, etc., enumerated in the 7th section ; and because, while the title does not specifically use the word "wines," or mention at all "medicated bitters" or "fruits in alcohol," the body of the act declares it shall be penal to vend, sell, or barter such of these articles as will, when taken to excess, produce intoxication.    It is to be noted that the demurrer does not attack the act because the word "barter" occurs in its body and not in its

title; nor is the validity of the indictment challenged on the ground that it charges the act of bartering conjunctively with that of selling. As will be observed, the title of the act does embrace "vinous" and "intoxicating" liquors. This certainly is sufficient to authorize legislation with respect to "wines" and intoxicating "medicated bitters." So the question really presented by the ground of the demurrer now under discussion simply is: Must the whole act fall because, under a title which is silent as to the giving away of anything, and which contains nothing with respect to fruits in alcohol, it undertakes to forbid the giving away of fruits of this description which are intoxicating in character; or is so much of the act as relates to sales of "spirituous, vinous, malt, or intoxicating liquors" valid and constitutional? It often happens that a portion of an act not covered by its title must be treated as unconstitutional, while the remainder of it which is covered by the title is upheld. It would not be difficult to give instances of this kind ad nauseam. The rule applicable to such a question as that now before us was well stated by the present Chief Justice of this court in *Elliott* v. *State*, 91 *Ga.* 696. He said: "When a statute can not be sustained as a whole, the courts will uphold it in part, when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, if, after the objectionable part is stricken, enough remains to accomplish that purpose. But if the objectionable part is so connected with the general scope of the statute that, should it be stricken out, effect can not be given to the legislative intent, the rest of the statute must fall with it." This rule was recognized and followed in *Papworth's* case, supra, with the result that a majority of the court held the act then under consideration to be totally void. Testing our present question by this rule, it is easy of solution, and the conclusion is readily reached that so much of the Douglas county act as is referred to in the latter clause of the question is good. No reasonable man can for a moment doubt that it was the intention of the General Assembly, in case this act should be adopted by popular vote, to prohibit in Douglas county (with the saving provision as to domestic wines, noted above) the sale of all liquors embraced within the descriptive terms employed in the title of the act, and that this was "the main purpose which the legislature sought to accomplish;" and it would be wholly un-

reasonable to presume that the statute with the provisions as to giving away any of the liquors or fruits in alcohol eliminated would not have been enacted.

3. In several grounds of the demurrer the indictment is attacked for charging collectively the sale of all the enumerated liquors, etc., without specifying and charging singly the sale of some particular one of them, and for failure to state to whom the sales were made. Under previous decisions of this court, these objections to the indictment are without merit. It is now well settled that an indictment charging the unlawful sale of intoxicating liquors need not specify "the kind or quantity sold, the price, or the name of the purchaser." *Williams* v. *State*, 89 *Ga.* 483, cited and followed in *Redding* v. *State*, 91 *Ga.* 231. See also *Newman* v. *State*, 101 *Ga.* 534, and the cases cited on page 538.

· 4. Another ground of the demurrer is in these words: "Because deft. insists, when the legislature of the State put 'domestic wine' on the free list to be sold by the manufacturers in quantities of not less than one quart, that it once being put on the free list, that such 'domestic wine' may be sold·by any one other than the manufacturer. Such is the true intent and meaning of the acts of 1877, heretofore referred to in this demurrer." There is no merit in this ground. The sale of domestic wines was not, by the act of 1877, cited above, put upon the "free list," as stated.

5. The remaining grounds of the demurrer read as follows: "Because the indictment is bad, for it charges deft. with being guilty for selling any kind of 'wines' that are intoxicating, without making any exceptions whatever." "Because 'domestic wines' are excepted in the local option act for Douglas county, approved on September 4th, 1885, and above set out in the 8th section thereof; and before deft. can be put on trial, the bill of indictment should make an exception of 'domestic wines'; under the present indictment he can not be put upon trial, because he is charged with selling all intoxicating liquors, including 'domestic wines.'" For aught that appears, the grand jury may have deliberately intended to charge the accused with selling domestic wines, and the failure to make an exception as to them may have been by design. If he sold such wines without being the producer thereof, or if, being the producer, he sold them by the drink in any of the places forbidden by the statute, he was guilty of a penal offense. The point, therefore,

that no exception as to domestic wines was made in the indictment is plainly without merit.

6. Counsel for the plaintiff in error argued here that the indictment was bad because it in general terms charged the accused with selling intoxicating wines of all descriptions, when it should, in order to show that the alleged acts of the accused in selling wines were penal, have expressly stated either that the wines sold by him were not domestic wines, or, if wines of that character, that he was not the producer thereof or else sold the same by the drink in a saloon, or in a barroom, or in some other regular public place of business. This argument was based on the two grounds of the demurrer last above copied. We have been unable, after the most careful study of them, to discover that any such point was made. If such was the design, the same was not made apparent by the language employed.

7. This brings us to a consideration of the motion for a new trial. In several grounds thereof it is complained that the court erred in allowing the State to prove that the accused sold whisky on days other than that specified in the indictment, although other indictments similar to that on which he was being tried, covering in whole or in part the same statutory period of limitation, and charging him with committing like offenses, were pending against him. It has been so often ruled by this court that the State may prove the commission of an offense charged in an indictment at any time within the statute of limitations, it is unnecessary to cite particular cases. Nor is this well-settled rule any the less operative because of the pendency against the accused of other indictments of the nature just indicated. If all of them charged the offense in such general terms as to render it impossible to determine that the act charged in one was a different one from that or those charged in the others, one acquittal or conviction would dispose of all the indictments, and this would sufficiently protect the accused from the danger of being more than once convicted of the same offense. See *McWilliams* v. *State*, 110 *Ga.* 290, and cases cited.

8. One ground of the motion for a new trial assigns error upon the refusal of the court to sustain a motion to quash the indictment. The grounds of this motion are set forth, but it is needless to state them here; for, even if of a meritorious nature, the refusal to quash could in no event be regarded as ground for a new trial, as

it should have been made the subject-matter of a direct exception. It would be folly to order a new trial on a bad indictment. See, in this connection, *O'Shields* v. *State*, 92 *Ga.* 472; *Broaden* v. *State*, 95 *Ga.* 481; *Cleveland* v. *State*, 109 *Ga.* 265; *Heard* v. *State*, 113 *Ga.* 444, and cases cited.

9. In other grounds of the motion for a new trial error is assigned upon a refusal to continue the case; upon an instruction given to the jury; and upon a refusal to require the solicitor-general to "elect on which of the offenses set out in the indictment he [the accused] would be put on trial." Complaint is also made that the verdict is contrary to the evidence; and still other grounds of the motion are based on newly discovered evidence. We have carefully examined and closely considered all of these grounds. The material questions of law presented by those of them which are not founded on newly discovered evidence have either been settled by previous adjudications of this court or are covered and disposed of by the rulings announced in the headnotes above, numbered from 1 to 7. There was ample evidence to support the verdict, and the newly discovered evidence was not of such a character as to justify the granting of a new trial or to call for extended discussion. Its main tendency was to show that another was guilty of offenses similar to that of which the accused was convicted. After a thorough and painstaking investigation of this case, we find no reason for setting the verdict aside.

*Judgment affirmed. All the Justices concurring, except Little, J., absent.*