SiNNott, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover $6,109.97, with interest, alleged to have been erroneously exacted by the United States as excise taxes on articles known as the Warner lens and Patterson lens, between the dates of June, 1923, and June, 1925, *241 inclusive, under provisions of section 900 of the revenue act of 1921 (42 Stat. 227, 291) and section 600 of the revenue act of 1924 (43 Stat. 253, 322).
Plaintiff, during the period covered by the claim involved in this suit, had an exclusive license to manufacture, sell, and distribute said lenses. Plaintiff during said period purchased the patent.for the Warner lens. During the period in question plaintiff sold all the lenses which are the subject of this suit. It did not, however, actually perform the labor necessary to the finished product. That labor was performed by three factories under the following arrangement:
Plaintiff endeavored to keep a sufficient stock of the various sizes of the lenses in question on hand at all times. Occasionally, however, purchasers did place orders with plaintiff which could not be filled from the stock. On such occasions it was plaintiff’s practice to transmit the orders to one of the three factories which would either ship the finished product when completed to plaintiff or to the purchaser, according to the direction of the plaintiff. On other occasions plaintiff directed the Kelly Reasner Agency, which purported to be the agent for all three of the factories, to furnish specified amounts as needed by plaintiff to keep its stock intact, and at the time of so directing the agency determined the prices to be paid for making the lenses. This price varied according to the fluctuating price of glass. When the price of glass was high plaintiff paid the factories correspondingly higher for the lenses shipped to plaintiff, or the purchasers from plaintiff.
The lenses in question were made from plaintiff’s molds, according to the patented designs, and the specifications furnished by plaintiff to the factories. These factories could make the lenses in question, only for the plaintiff and for nobody else, and at all times the record shows the factories to have been subject to the plaintiff’s orders, and plaintiff at all times maintained exclusive control of its designs, specifications, and molds.
Plaintiff was the only one who could contract for the sale of the lenses in question, and also made the profits from the sales of these lenses, and from these profits paid to the fac *242 tories the cost of raw material, which varied, plus a certain ■specified profit, as well as the cost of labor.
The Patterson lenses were sold exclusively for use on .automobiles and trucks. According to one witness 60% and according to another 70% of the Warner lenses were sold to the automotive trade.
On July 28, 1925, plaintiff filed a claim for refund with the Commissioner of Internal Eevenue for manufacturer’s excise tax so paid on the lenses in question for the period from June, 1923, to June, 1925, inclusive, in the amount of $6,109.97. This claim was rejected by the Commissioner of Internal Eevenue on December 2, 1925.
Said claim was based solely on the ground that plaintiff was not the manufacturer or producer of the lenses in question. (Finding V.) Plaintiff in its petition seeks to add another ground for its claim, namely, that the lenses in question are not parts or accessories of automobiles. This ground was not urged as a basis for refund before the Commissioner of Internal Eevenue and can not be urged here. See Kaltenbach v. United States, No. D-584, decided by this court January 7, 1929 (66 C. Cls. 581), quoting from Red Wing Malting Co. v. Willcuts, 15 Fed. (2d) 626, where the court said:
“ The precise ground upon which the refund is demanded must be stated in the application to the commissioner, and we think, if that is not done, a party can not base a recovery in •the court upon an entirely different and distinct ground from that presented to the commissioner.”
The sole question for decision is whether plaintiff is a “ manufacturer ” or “ producer ” of the lenses in question, within the meaning of section 900 of the revenue act of 1921 .and section 600 of the revenue act of 1924, supra.
The taxing acts provide that the taxes with which this suit is concerned—
“ * * * shall be * * * paid by the manufacturer, producer, or importer.”
Plaintiff contends that it was not the “ manufacturer ” or “ producer ” of the articles in question, because it did not do the actual labor necessary to produce the finished product.
Article 7 of the Treasury Eegulations 47, under the revenue act of 1921, defines a manufacturer as follows:
*243 “A manufacturer is generally a person who (1) actually makes a taxable article, or (2) by changes in the form of an article produces a taxable article, or (3) by the combination of two or more articles produces a taxable article. Under certain circumstances,, however, the ‘pers<m who actually makes, produces, or assembles the taxable article is not the manufacturer for the purpose of the tax. There may be several stages of manufacture and several manufacturers, each of whom must pay a tax. In such cases the tax attaches on successive sales, subject to the provisions as to credits (see art. 6). The following examples are merely illustrative:
‡ $ $ $ $
“Example 3. ‘A’, a dealer or jobber, contracts with (B ’ for the manufacture of a taxable article, whereby £ B ’ receives from £A’ the cost of materials and labor plus a specified profit. £A’ is the manufacturer.
“ Example 5. £A,’ a dealer or jobber, owns a patent, trade, formula, or recipe for a taxable article, and contracts with £ B ’ for the manufacture thereof, the contract specifying that £ B ’ can manufacture the article only for £A’; that £A’ will take the entire output; and that it will be sold by £A’ as the' manufacturer, £ B’s ’ name not appearing on the article. £A’ is the manufacturer.”
Article 7 of Regulations 47 under section 600 of the revenue act of 1924, provides substantially the same.
It is apparent that plaintiff is clearly within the examples cited above.
The regulations above cited seem to us to be reasonably adapted to the enforcement of the act in question, and do not appear to be in conflict with the expressed statutory provisions in question.
The examples cited in the regulations seem to be based upon the maxim “ Qui faoit per aliwn facit per sc.”
The record shows conclusively that during the period in question plaintiff was in the same position as the owner of the patents, and no one else could manufacture the lenses without the consent of the plaintiff. For all practical purposes the three companies occupied the position of plaintiff’s factories for the production of the lenses. Plaintiff had at all times exclusive control of the designs which it submitted to the factories, and none of the factories could *244 produce the lenses from these designs without the consent of the plaintiff. Plaintiff also saw to it that these lenses were made according to the specifications as submitted to the three factories. Plaintiff also submitted molds from which the lenses were made. These molds were also subject to the exclusive control of plaintiff. It is apparent to us from the record that the three factories were the factory agents of the plaintiff for the production of the lenses.
In Foss-Hughes Co. v. Lederer, 287 Fed. 150, the court said, with reference to the meaning of the words “ manufacturer ” and “ producer,” in section 600 of the revenue act of 1917 (40 Stat. 316) :
“ There is no claim that the plaintiff imports, and none that he is a manufacturer, except in the sense in which one who has something made for him by others, to be sold by him, may be said to be a manufacturer. This is doubtless the sense in which Congress used the word ‘producer,’ and was also doubtless the occasion for its use.”
Plaintiff cites in its brief, on the point that the terms “ producer ” and “ manufacturer ” are synonymous, Hancock v. State (40 S. E. 317; 114 Ga. 439).
What the court said in that case would seem to be against plaintiff’s contention, as it held not only that said words were synonymous but also that a manufacturer is one who causes an article to be made:
“ We hold that the word ‘ producer,’ as used in the special act, is identical in meaning with ‘ manufacturer ’; and the latter term, of course, applies both to him who actually makes the wine, and to him who causes it to be made.” (Hancock v. State, 40 S. E. 318.)
The case of Carbon Steel Co. v. Lewellyn, 251 U. S. 501, is a case in point on the meaning of the word “manufacturer.” In that case petitioner contended that it did not manufacture munitions; that the munitions were manufactured by independent contractors.
The Supreme Court held as follows :
“ The act is explicit in its declaration; perplexity and controversy come over its application. One must be a ‘ person manufacturing ’ to incur the tax, but who is to be regarded as such person in the sense of the act ? or to put another way, when is ‘ manufacturing ’ (the word of the act) done, and *245 when is ‘ manufactured ’ (the word of the act) attained ? In elucidation of the words, the specifications enumerate nine operations to produce a shell, that is a completed shell (except for explosive charge and detonating device), such as petitioner contracted to deliver to the British Government. And all of the operations are asserted to be necessary and all must be performed seemingly by the same person in order that he may be designated as a ‘ person manufacturing.’ We put aside for the purpose of testing the contention the provision of the act making a person manufacturing any part of any of the articles mentioned ’ subject to ‘a tax.’
“ The contention reduces the act to a practical nullity on account of the ease of its evasion. Besides, petitioner minimizes what it did. It was the contractor for the delivery of shells, made the profits on them and the profits necessarily reimbursed all expenditures on account of the shell. It was such profits that the act was intended to reach — profits made out of the war and taxed to defray-the expenses of the war. Or, as expressed by the Court of Appeals, Congress ‘ felt that the large abnormal profits incident to these war •contracts created a remunerative field for temporary taxation.’ Petitioner, it is true, used the services of others, but they were services necessary to the discharge of its obligations and to the acquisition of the profits of such discharge. And petitioner kept control throughout — never took its hands off, was at pains to express the fact, and retained its ownership of all of the materials furnished by it, and the completed shell belonged to it until delivered to the British Government. * * *
“ We recognize the rule of construction, but it can not be carried to reduce the statute to empty declarations. And, as we have already said, petitioner’s contention would so reduce it. How universal must the manufacturing be? Will the purchase of an elemental part destroy it? And how subsidiary must the work of the subcontractor be not to relieve the contractor — take from him the character of a ‘ person manufacturing ’ ? And such is the tangle of inquiries we encounter when we undertake to distinguish between what a contractor to deliver a thing does himself and what he does through others as subsidiary to his obligation.
“ It is after all but a question of the kind or degree of agency — the difference, to use counsel’s words, between servants and general agents ’ and ‘ brokers, dealers, middle men, or factors.’ And this distinction between the agents counsel deems important, and expresses it another way, as follows: ‘ “ Every person manufacturing ” means the person •doing the actual work individually, or through servants or *246 general agents, and that the ownership of the material worked upon does not alter this meaning of the word.’
“We are unable to assent to this meaning of the word. It takes from the act a great deal of utility and makes it miss its purpose. Of course, it did not contemplate that a ‘person manufacturing’ should use his own hands — it contemplated the use of other aid and instrumentalities, machinery, servants, and general agents, availing thereby of the world’s division of labor; but it contemplated also the world’s division of occupations, and, in this comprehensive way, contemplated that all of the world’s efficiency might be availed of, and, when availed of for profits, the latter could not thereby escape being taxed. And where, indeed, was the hardship of it? The tax was on profits and measured by them.”
We must conclude that plaintiff was a manufacturer or producer, within the meaning of the taxing act. Plaintiff’s petition will be dismissed. It is so ordered.
GeeeN, Judge, and Booth, Chief Justice, concur.
GRAham, Judge, took no part in the decision of this case; and Moss, Judge, took no part, on account of illness.