**RECORD GUILD OF AMERICA, INC.,**
v.
**UNITED STATES.**

United States Court of Claims.
May 6, 1959.

Samuel Brodsky, New York City, for plaintiff. Alfred Miller, New York City, on the brief.

George T. Rita, Washington, D. C., Asst. Atty. Gen., Charles K. Rice, for defendant, James P. Garland and Lyle M. Turner, Washington, D. C., on the brief.

**WHITAKER, Judge.**

This is a suit for refund of a Federal manufacturer's excise tax imposed upon plaintiff as the manufacturer of certain phonograph records. The legal question presented for our determination is whether plaintiff was the statutory "manufacturer" of these records and liable for the tax imposed by section 3404 (c)[1] of the Internal Revenue Code of 1939.

Prior to April 14, 1949, plaintiff was the actual manufacturer and wholesaler of children's phonograph records. On that date, however, it entered into a series of agreements with Waterbury Companies, Inc. (hereinafter called Waterbury), which altered its business operations. Under this arrangement: Waterbury purchased all of plaintiff's factory equipment and moved it to its own plant in Waterbury, Connecticut; plaintiff granted an exclusive and non-assignable license to Waterbury to manufacture records, using stampers made from the plaintiff's original recordings, as well as recordings which the plaintiff would produce in the future, but plaintiff maintained ownership of these recordings; plaintiff furnished all the pictures or drawings which appeared on the records and on the accompanying sleeve packages.

The records which were produced by Waterbury were to be sold either to the plaintiff, for resale by it, or by Waterbury itself, to fifteen large department or "chain" stores, which were known as

---

1. Section 3404(c) of Title 26 U.S.C. (1952 ed.) reads:
   "§ 3404. *Tax on radio receiving sets, television receiving sets, phonographs, phonograph records, and musical instruments.*

   "There shall be imposed upon the following articles (including in each case, except in the case of musical instruments, parts or accessories therefor sold on or in connection with the sale thereof) sold by the manufacturer, producer, or

the syndicate stores. Waterbury guaranteed to produce a minimum number of records and it further guaranteed to sell to plaintiff at least one-third of all the records it produced. Originally the actual sale of the records to the retailers was to be carried out by independent distributing corporations, but by the tax year in question plaintiff acted as the distributor for both the records it sold to independent stores, as well as records sold by Waterbury to the syndicate stores.

The financial arrangement between Waterbury and plaintiff was quite complicated. In essence, however, it provided that plaintiff should receive a five per cent commission for all sales which it made to the syndicate stores as Waterbury's distributing agent. The sales made by plaintiff to independent stores were made at a price fixed by plaintiff, and Waterbury reserved only the right to disapprove these sales for credit reasons. Because of the advances Waterbury made to finance plaintiff's operations,[2] all payments for sales made to the independent stores were mailed directly to an escrow account controlled by Waterbury in a Waterbury, Connecticut, bank. Waterbury withdrew from the account the price it charged plaintiff for the records, and then applied the remainder to reduce plaintiff's indebtedness arising from the advance payments made by Waterbury.

In June 1953, at the direction of the Internal Revenue Bureau, plaintiff filed a manufacturer's excise tax return showing the total tax for phonograph record sales for that month in the amount of $3,377.04, against which was credited $3,198.80, which was the tax previously paid by Waterbury on its sales of these

records to plaintiff. Plaintiff then paid the resulting net tax of $178.24 under protest. This tax was based upon the difference in price received by plaintiff from its customers and the amount received by Waterbury from plaintiff. The tax levied against plaintiff is on only the sales made by it to the independent stores. It is the Government's contention that with regard to these sales, plaintiff is the statutory manufacturer of the records.

In order to determine the issue we must look first at the manufacturing process involved. To manufacture these phonograph records approximately eight steps must be accomplished. (1) The drawings are prepared for stamping on the finished record. These drawings consisted of scenes depicting, for instance, some of the escapades of "Br'er Rabbit", or others designed to attract the eyes of children. (2) The song which is to be recorded is played and the sound waves are collected on a plastic record by means of a recording needle. (3) This plastic "master" is then prepared for electroplating. (4) The plastic material is then placed in an electroplating bath and covered with a coating of metal. This metal shell is then removed from the plastic and is called the metal master. (5) The metal master is then placed in an electroplating bath and a metal shell is formed thereon. This shell is then stripped off and represents a record which is in all respects the same as the original plastic or wax recording. This is called a "mother" record. (6) The mother is in turn placed in an electroplating bath and a thin shell deposited thereon which when stripped off is known as the working matrix or stamping matrix. (7) The stamper is

importer a tax equivalent to 10 per centum of the price for which sold:

\* \* \* \* \*

"(c) phonograph records."

2. Although we think it immaterial to the disposition of this case, it is true, as plaintiff says, that Waterbury advanced money to plaintiff to pay for the art work, to pay commissions to plaintiff's salesmen, for advances to cover plaintiff's

commissions and profit, and for other purposes. Plaintiff was always in debt to Waterbury. In October 1952 it owed Waterbury a considerable sum, and the debt continued to grow. However, by these advances of money, Waterbury clearly did not make plaintiff its agent, except for the sales to syndicate stores, which are not involved in this action. It exercised no control whatever over plaintiff's other activities.

reinforced with nickel. (8) The record is then stamped out by placing the plastic material in a press under great pressure. Before stamping, the scenes prepared by plaintiff are impressed on the plastic material.

Of these eight steps, plaintiff accomplished the first five, and Waterbury then completed the process by using the "mother" record produced by plaintiff. Thus, Waterbury's price upon sale of the finished product to plaintiff was based only on the last four steps in the overall process of production, plus the sum of $5,000 per year, which it paid plaintiff for its share of the cost of the drawings impressed on the face of the records. On the other hand, the price charged by plaintiff was of necessity based not only on the price charged it by Waterbury, but also its cost of carrying out the first five steps in the manufacturing process. It results that plaintiff's sale to the independent stores was the first sale to reflect the entire cost of the eight-step manufacturing operation.

We are of opinion that Congress in levying the manufacturer's excise tax intended that the tax should attach to the entire cost of the manufacturing process. Thus, the courts have consistently held that a person, who furnishes material to an independent contractor to manufacture a taxable item for him exclusively, is the manufacturer within the meaning of the revenue statute. Carbon Steel Co. v. Lewellyn, 251 U.S. 501, 40 S.Ct. 283, 64 L.Ed. 375; Warner-Patterson Co. v. United States, 68 Ct.Cl. 237. The applicable Treasury regulations [3] so provide. On at least one occasion it has been held that a patent owner-distributor, who in fact did none of the actual manufacturing or assembling of the taxable item, was the manufacturer. Polaroid Corp. v. United States, 1 Cir., 235 F.2d 276. The court

in the latter case based its decision partly on the fact that the price to the patent owner did not include any amount for royalty, which, of course, is a part of the cost of manufacturing a patented article.

However, in our case the plaintiff did in fact carry out certain steps in the manufacturing process, and its sales price to the independent stores was based upon the entire cost of manufacture. Waterbury's sale price to plaintiff was not. The tax was levied on the initial sales price which was based upon the entire cost of manufacture. This was plaintiff's price to the independent stores, not Waterbury's price to it.

It results, therefore, that plaintiff is not entitled to recover, and its petition will be dismissed.

It is so ordered.

MARIS, Circuit Judge (Retired), sitting by designation, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

3. Treasury Regulations 46, § 316.4 reads in part:
   "Sec. 316.4 *Who is a manufacturer.*—
   \* \* \*
   "Under certain circumstances, as where a person manufactures or produces a taxable article for a person who fur-

nishes materials and retains title thereto, the person for whom the taxable article is manfactured or produced, and not the person who actually manufactures or produces it, will be considered the manufacturer."