## 23926.   BERTA v. THE STATE.

ARGUED FEBRUARY 13, 1967—DECIDED MARCH 23, 1967—
REHEARING DENIED APRIL 6, 1967.

*Kravitch & Hendrix, John W. Hendrix, Aaron Kravitch, Phyllis Kravitch,* for appellant.

*Andrew J. Ryan, Jr., Solicitor, Tom A. Edenfield, A. Pratt Adams, Jr.,* for appellee.

COOK, Justice.   Robert Berta was accused of the offense of misdemeanor "in that said defendant did pursue his business and the work of his ordinary calling on the Lord's Day, and which was not a work of necessity or charity, to wit: by selling two decks of playing cards on Sunday, June 6, 1965." His demurrers to the accusation were overruled.   He was convicted and sentenced to pay a fine of $100, or in default thereof to serve a sentence of four months.   His motion for new trial, as amended, was denied.   He appeals from the judgment of conviction and sentence thereon and from the denial of his motion for new trial, as amended.

The questions made by the enumeration of errors involve the sufficiency and constitutionality of the accusation, the constitutionality of the statute (*Code* § 26-6905) under which the accusation was brought, the sufficiency of the evidence to sus-

tain the verdict, and the correctness of certain instructions to the jury.

■ *Code* § 26-6905 provides: "Any person who shall pursue his business or the work of his ordinary calling on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor." Statutes requiring the cessation of labor on Sunday have been in effect in this state since colonial days. See *Hayden v. Mitchell*, 103 Ga. 431, 440 (30 SE 287).

It is contended that the statute is discriminatory because it selects the Christian Sunday as the Sabbath day and discriminates against those religious groups that use Saturday as the Sabbath day. Historically the requirements of our law forbidding labor on Sunday, and similar laws of other states, were based on religious beliefs in regard to the sanctity of the Sabbath day as observed by people of the Christian faith, and this background is reflected in our statute, which refers to Sunday as "the Lord's day." It is now generally held that the authority to enact and enforce such laws rests within the police power of the state.

In *Hennington v. State*, 90 Ga. 396, 398 (17 SE 1009), decided by this court in 1892, statutes requiring the cessation of labor on Sunday were held to be of a police nature. In that case Mr. Chief Justice Bleckley, speaking for the court, said in part: "With respect to the selection of the particular day in each week which has been set apart by our statute as the rest day of the people, religious views and feelings may have had a controlling influence. We doubt not they did have; and it is probable that the same views and feelings had a very powerful influence in dictating the policy of setting apart any day whatever as a day of enforced rest. But neither of these considerations is destructive of the police nature and character of the statute. If good and sufficient police reasons underlie it, and substantial police purposes are involved in its provisions, these reasons and purposes constitute its civil and legal justification, whether they were or not the direct and immediate motives which induced its passage, and have for so long a time kept it in force. Courts are not concerned with the mere beliefs and sentiments of legislators, or with the motives which influence them in enacting

laws which are within legislative competency. That which is properly made a civil duty by statute is none the less so. because it is also a real or supposed religious obligation; nor is the statute vitiated, or in any wise weakened, by the chance, or even the certainty, that in passing it the legislative mind was swayed by the religious rather than by the civil aspect of the measure. . . Opinions may differ, and they really do differ, as to whether abstaining from labor on Sunday is a religious duty; but whether it is or not, it is certain that the legislature of Georgia has prescribed it as a civil duty. The statute can fairly and rationally be treated as a legitimate police regulation, and thus treated, it is a valid law. There is a wide difference between keeping a day holy as a religious observance, and merely forbearing to labor on that day in one's ordinary vocation or business pursuit." The *Hennington* case was affirmed by the Supreme Court of the United States. Hennington v. Georgia, 163 U. S. 299 (16 SC 1086, 41 LE 166).

In McGowan v. Maryland, 366 U. S. 420, 444 (81 SC 1101, 6 LE2d 393), in which a Maryland Sunday closing law was held not to be subject to the attack that it denied religious liberty, the Supreme Court of the United States used the following language: "Throughout this century and longer, both the federal and state governments have oriented their activities very largely toward improvement of the health, safety, recreation and general well-being of our citizens. Numerous laws affecting public health, safety factors in industry, laws affecting hours and conditions of labor of women and children, week-end diversion at parks and beaches, and cultural activities of various kinds, now point the way toward the good life for all. Sunday Closing Laws, like those before us, have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. The present purpose and effect of most of them is to provide a uniform day of rest for all citizens; the fact that this day is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals."

In Braunfeld v. Brown, 366 U. S. 599 (81 SC 1144, 6 LE2d 563), and Gallagher v. Crown Kosher Super Market, 366 U. S.

617 (81 SC 1122, 6 LE2d 536), it was held that the Pennsylvania and Massachusetts Sunday closing laws did not violate the equal protection clause of the Fourteenth Amendment to the Constitution on the ground that they discriminated against people of the Orthodox Jewish Faith, which requires the total abstention from all manner of work from nightfall each Friday until nightfall each Saturday.

*Code* § 26-6905 is an exercise of the police power of the state, and it is not subject to the attack that it discriminates against religious groups which do not observe Sunday as the Sabbath day.

■ It is asserted that *Code* § 26-6905 violates the due process clause of both the state and federal Constitutions because the statute is too vague, uncertain, and indefinite to constitute the basis of a criminal prosecution; and the same contention is made with reference to the accusation. It is also asserted that the statute violates the Sixth Amendment to the Constitution of the United States, providing that in all criminal prosecutions the accused shall "be informed of the nature and cause of the accusation." *Code* § 1-806. The portion of the statute claimed to be vague, uncertain, and indefinite is the exception of "works of necessity or charity."

In Carr v. State, 175 Ind. 241, 261 (93 NE 1071), it was said: "The police power is not a fixed or known quantity, but the expression of social, economic and political conditions." Under changing conditions of social and economic life, the conception of those things which may be classified as "works of necessity or charity" may change. In *Williams v. State,* 167 Ga. 160 (144 SE 745, 60 ALR 747), this court held that the sale of gasoline on Sunday is a work of necessity. Such sales were, of course, not only unnecessary, but unknown, at an earlier time in our history.

In the *Williams* case, supra, in discussing the meaning of the word "necessity," this court held: "All the courts are agreed that statutes providing a day of rest are constitutional, and that they should be liberally construed so as to effectuate the purpose intended; but frequently it is hard to determine whether the particular act under investigation is really a work of ne-

cessity, and this has induced the courts generally, when there was reasonable doubt whether the work was or was not one of necessity, to treat the question, as we think quite properly, as one of fact and determine it according to the facts of each particular case."

The fact that a determination must be made in each case as to whether the act charged as violating *Code* § 26-6905 is a work of necessity or charity does not make the statute, or the accusation drawn under it, so vague, indefinite, and uncertain as to render it unconstitutional.

■ It is contended that *Code* § 26-6905 is violative of the equal protection clause of the State Constitution (*Code Ann.* § 2-102) because Ga. L. 1949, pp. 1007-1009 (*Code Ann.* § 26-6915 et seq.) amended the statute by allowing citizens of any town or county to provide for the operation of motion picture theaters, and athletic events, games, and contests to be held on Sunday, which are not "works of necessity or charity."

In McGowan v. Maryland, 366 U. S. 420, supra, the Supreme Court of the United States considered the question of the constitutionality of Maryland Sunday closing laws which had numerous specific exceptions, besides the general exception of all works of necessity and charity, and held that the Maryland statutes did not violate the equal protection clause of the Fourteenth Amendment of the United States Constitution. It was there held (1 a): "On the record in this case, it cannot be said that the classifications made by the statute are without rational and substantial relation to the objects of the legislation, so as to exceed the wide discretion permitted the States in enacting laws which affect some groups of citizens differently from others." In Gallagher v. Crown Kosher Super Market, 366 U. S. 617, supra, it was held that numerous exceptions to the Massachusetts Sunday closing laws did not make the statutes violate the equal protection clause of the United States Constitution.

It is the general rule that "in enacting statutes or ordinances requiring observance of Sunday, the legislative body is vested with discretion in determining the kinds of pursuits, occupations, or businesses to be included or excluded, and its determination

will not be interfered with by the courts provided the classification and discrimination made are founded upon reasonable distinctions and have some reasonable relation to the public peace, welfare, and safety." 50 AmJur 810, Sundays and Holidays, § 11. This court has held that it is within the power of the General Assembly, in the proper exercise of the police power of the State, to regulate certain trades or occupations, and not regulate others, "unless the regulations are so unreasonable and extravagant that the property or personal rights of the citizen are unnecessarily and arbitrarily interfered with, without due process of law, . . ." *Cooper v. Rollins,* 152 Ga. 588 (2) (110 SE 726, 20 ALR 1105).

We can not say that the exception from the operation of the Sunday law of recreational activities and events bears no reasonable relation to the public welfare which is sought to be promoted by the Sunday law, under the present conception that it is a day for rest and relaxation of the people, giving them relief from the stress and strain of their ordinary labor and business.

There is no merit in the contention that the accusation is unconstitutional because the statute undertakes to punish the carrying on of usual avocations or trades, but does not make it penal to carry on unusual avocations or trades. The statute is not susceptible to such a construction. The accusation alleged that the defendant pursued his business and the work of his ordinary calling on Sunday.

■ It is urged that the evidence was insufficient to support the verdict of guilty because the State failed to prove beyond a reasonable doubt that the purpose for which the cards were purchased was not within the exception of "works of necessity or charity," and failed to prove that the seller had knowledge, or reason to believe, that the articles would be used for a purpose in violation of the law.

The defendant was the manager of a drug store in the City of Savannah in which many articles besides drugs are sold. Although he did not make the sale, the defendant, as manager, accepted responsibility for it. The witness who testified that he purchased the playing cards testified that it was not essential

that he have the cards on that day, and that he did not buy them for any "works of charity." This witness, on cross examination, admitted that he made the purchase for his father, who had been employed as a private investigator by the Retail Merchants Division of the Savannah Area of the Chamber of Commerce.

It is incumbent on the State in every prosecution based on *Code* § 26-6905 "to allege and prove that the acts done by the accused in the course of his ordinary calling were not works of necessity or charity." *Arnheiter v. State,* 115 Ga. 572, 575 (41 SE 989, 58 LRA 392). This burden was carried by the State when the customer testified that the cards were not necessary or for "works of charity." There was no evidence to the contrary.

The instructions to the jury complained of in the amended motion for new trial and the enumeration of errors are not claimed to be erroneous, but it is asserted that further instructions should have been given that it was the duty of the State to prove that the seller knew that the articles purchased would not be used for purposes of necessity or charity. Playing cards would not, ordinarily, be a necessity, or be purchased for a charitable purpose. It was not incumbent on the State to prove that the seller knew that the cards would *not* be used for such purposes.

*Judgment affirmed. All the Justices concur.*