29608. RUTLEDGE et al. v. GAYLORD'S, INC.
29647. HUGHEY et al. v. GAYLORD'S, INC.

NICHOLS, Chief Justice.

Gaylord's, Inc. filed a complaint in the Superior Court of Muscogee County against the District Attorney of the Chattahoochee Judicial Circuit, the Solicitor of the State Court of Muscogee County, the sheriff of such county and the Chief of Police of Columbus, Georgia in which the plaintiff corporation sought to have declared unconstitutional an Act entitled "The Common Day of Rest Act of 1974." Ga. L. 1974, p. 186. After hearing evidence the trial court granted the plaintiff a temporary injunction in which the Act was declared to be unconstitutional and which enjoined the defendants from enforcing the provisions of such Act. Thereafter, the defendants, while not acquiescing in the former judgment entered in the case, agreed that there was no need for further hearing or additional evidence and a permanent injunction was granted. In Case No. 29608 the sheriff and chief of police appeal and in Case No. 29647 the district attorney and solicitor appeal from such judgment.

The first section of the Act attacked provides: "The purpose of this Act is to promote the health, recreation, welfare, repose and religious liberty of each individual of this State. The provisions of this Act are not designed to be discriminatory in any way or to any group, but rather to provide the public with necessary benefits and services at all times, while at the same time protecting the lawful humanitarian, social, and religious rights of each individual."

Section 2 contains the following definitions: "(a) the 'two (2) consecutive days of Saturday and Sunday' shall mean the time between midnight on Friday and midnight on Saturday and from midnight on Saturday to midnight

on Sunday.

"(b) 'Two rest days' means the time between midnight on Friday and midnight on Saturday and from midnight on Saturday to midnight on Sunday."

Section 3 of the Act provides: "Any person operating a business who, on both the two (2) consecutive days of Saturday and Sunday, sells, offers for sale, or shall compel, force or oblige his employees to sell any item, except those businesses, activities and items exempted from the provisions of this Act, shall be guilty of a misdemeanor. Each item illegally sold shall constitute a separate offense."

Section 4 provides for a fine for violating such Act and Section 5 declares the operation of any business, except those exempted, as a public nuisance and authorizes the district attorney or others to bring an equitable proceeding to enjoin the further violation of such Act. Section 6 mandates those businesses which operate on Saturday or Sunday to make all reasonable accommodations to the religious, social and physical needs of employees who customarily worship on such work days.

Sections 7 and 8 exempt from the provisions of such Act the activities of any person, nonprofit organization or nonprofit corporation conducting an activity solely for charitable or religious purposes, governmental agencies in the conduct of its official duties and its employees in the discharge of their official employment.

Sections 9 and 10 provide for the following additional exemptions: "Section 9. (a) The prohibitions of this Act are not applicable to the following businesses and activities or to the employees thereof: (1) restaurants, cafeterias, bakeries or other prepared food service facilities; (2) hotels, motels, and other lodging facilities; (3) hospitals and nursing homes; (4) dispensaries of drugs, medicines, toiletries and health needs; provided that areas of any store being utilized for the sale of goods not allowed by this Act shall be closed on one of such consecutive days; (5) ambulance and burial services; (6) generation and distribution of electric power; (7) distribution of gas, oil and other fuels; (8) telephone, telegraph and messenger services; (9) public transportation services, including taxi

and limousine services; (10) water, air and land transportation services and attendant terminal facilities; (11) public communication, including newspapers, television, radio and other news media; (12) automobile service stations; (13) manufacturing plants and processing operations; (14) heating, refrigeration and cooling services; (15) ice manufacturing and distribution which are related solely to any of the activities in subparagraphs (1) through (13); (16) repair and maintenance services for equipment and machinery which are related solely to any of the activities in subparagraphs (1) through (15); (17) florist services and horticultural services; (18) plant and industrial protection services; (19) repair or replacement parts and other equipment or accessories necessary to, and safety devices intended for, safe and efficient operation of land vehicles, boats and aircraft; (20) emergency plumbing, heating, cooling and electrical repair and replacement parts and equipment; (21) libraries; (22) educational lectures, forums and exhibits; (23) motion pictures, theatrical and musical performances; (24) athletic and sporting events; (25) parks, beaches and recreational facilities (golf courses, swimming pools, etc.); (26) scenic, historic and tourist attractions; (27) amusement centers, fairs, zoos and museums; (28) farmers' markets; (29) grocery stores and other stores or businesses which primarily sell unprepared food products, toiletries and health needs; provided that areas of any store being utilized for the sale of goods not allowed by this Act shall be closed on one of such consecutive days; (30) the sale of newspapers, magazines and tobacco products; (31) the sale of cooking, heating and lighting fuel; (32) the sale of gasoline, fuel additives, lubricants and antifreeze; (33) the sale of tires, tubes and tire repair materials; (34) the sale of drugs, medical and surgical supplies, or any other items purchased on the written prescription of a licensed medical practitioner for the treatment of a patient; and (35) the sale and lease of real estate; and (36) the sale of home repair material, equipment, supplies and accessories. (b) The provisions of this Act shall not affect other operations, businesses or activity which, by other provisions of law, are prohibited, permitted or regulated

on Sunday.

"Section 10. The provisions of this Act are not applicable to and shall not prohibit: (a) casual transactions between persons, none of whom are thereby carrying on a business or business transaction; (b) agricultural operations such as farming, animal and poultry husbandry, forestry and allied activity; (c) The conduct of the businesses and activities referred to in sections 7, 8 and 9 of this Act; (d) The practice of the healing arts by persons licensed or otherwise authorized to practice the healing arts under the laws of Georgia."

Section 11 provides for counties to be exempt from or included in all provisions of such Act after referendum. Provisions are then made in such Act for a referendum in 1974 in all counties.

While the Act here under consideration is entitled the Common Day of Rest Act of 1974 and states in its caption that it is "an Act to limit the doing of business on both the two consecutive days of Saturday and Sunday," yet a review of the Act discloses that it is in reality an Act which prohibits only "sales" on both Saturday and Sunday by certain businesses. The Act nowhere limits the operation of any business activity other than sales, and even sales are not limited when done by a business exempted by the Act. Thus, sales may be made by manufacturing concerns whether wholesale or retail. The operator of a service station or a garage who also sells automobiles may make sales of such automobiles under the Act. Yet, a dealer in automobiles who neither operates a service station or a repair shop would not be permitted to be open on both Saturday and Sunday for business.

The Act nowhere curtails the delivery and installation of products sold on another date. Any service contracted for on another date may be performed on the "day of rest."

Only "dispensaries of drugs, medicines, toiletries and health needs" under Section 9 (a) (4) and "grocery stores and other stores or businesses which primarily sell unprepared food products, toiletries and health needs" under Section 9 (a)(29) are required to close down a part of their operation on the "day of rest."

It is deemed unnecessary to look further into the

prohibitions of such Act on various segments of the business community to show that such Act is as patently discriminatory as the Act of 1967 (Ga. L. 1967, p. 479 et seq.) which was held in *Hughes v. Reynolds,* 223 Ga. 727 (157 SE2d 746), to violate Art. I, Sec. I, Par. II of the Georgia Constitution of 1945 (Code Ann. § 2-102) and under such decision and the authority cited there must fall. The remaining question for decision is whether or not such Act as a whole must fall or whether, under decisions exemplified by *Hancock v. State,* 114 Ga. 439, 442 (40 SE2d 317); *Elliott v. State,* 91 Ga. 694, 696 (17 SE 1004), and similar cases, and particularly in view of the severability clause included in such Act by the General Assembly (Section 12) when the unconstitutional provisions of such Act are removed is there enough of such Act remaining to preserve the legislative scheme.

Section 1, quoted above, sets forth the intent of such Act. When this section of the Act is read together with Section 6 which mandates that those businesses operating on Saturday or Sunday make reasonable accommodations to the religious, social and physical needs of employees who customarily worship on such work day, the real legislative scheme is carried out. Thus, only those provisions of the Act which arbitrarily require certain businesses to close on one of the two days are unconstitutional. To this extent the judgment of the trial court must be reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Gunter, J., who concurs specially and Jordan and Hall, JJ., who dissent.*

ARGUED JANUARY 21, 1975 — DECIDED FEBRUARY 13, 1975.

*Lenney F. Davis, E. H. Polleys, Jr., Arthur K. Bolton, Attorney General, Michael W. Dyer, Assistant Attorney General,* for appellants (Case No. 29608).

*Harry Dicus, Hoke Smith, E. Mullins Whisnant, District Attorney, Thomas W. Hughey,* for appellee.

*Robert G. Johnston, III, Assistant Solicitor,* for appellant (Case No. 29647).

*Arthur K. Bolton, Attorney General, E. H. Polleys,*

*Jr., Harry Dicus, Hoke Smith, E. Mullins Whisnant, District Attorney,* for appellees.

GUNTER, Justice, concurring specially.

It is my opinion that Sections 3 and 5 of "The Common Day of Rest Act of 1974" are unconstitutional. I find no constitutional infirmity in the remainder of the Act, and because of the elaborate severability section of the Act (Sec. 12), I would hold only Sections 3 and 5 to be unconstitutional.

Section 3 provides: "Any person operating a business who, on both the two (2) consecutive days of Saturday and Sunday, sells, offers for sale, or shall compel, force or oblige his employees to sell any item, except those businesses, activities and items exempted from the provisions of this Act, shall be guilty of a misdemeanor. Each item illegally sold shall constitute a separate offense."

It is clear that the seller of a non-exempt item on Saturday does not commit a crime unless he sells another non-exempt item on the succeeding Sunday. And a seller of a non-exempt item on Sunday does not commit a crime, unless he has sold another non-exempt item on the preceding Saturday. This section does not prohibit the sale of non-exempt items on either Saturday or Sunday. What it attempts to prohibit, and seeks to make a criminal act, is the sale of two or more non-exempt items on two successive days, Saturday and Sunday. The prohibition is not against the sale of the items per se, but the prohibition is against the sale of the items on two successive days.

The state through this section of the Act has said that one can sell an item on Saturday, and that is not a crime; but if one sells another item like it on Sunday, the second sale is a criminal act; and the second sale on Sunday, in and of itself not a criminal act, converts the first sale on the preceding Saturday into a criminal act.

The state argues that this is a valid exercise of the state's police power. I disagree.

The police power of the state is not unlimited, and when the General Assembly enacts a statute that invokes the police power, as this statute does, it is the duty of the courts to declare the statute unconstitutional if the police

power limits are exceeded.

The police power of the state is constitutionally inhibited by Georgia's Due Process Clause (Code Ann. § 2-103), by Georgia's Equal Protection Clause (Code Ann. § 2-102), and by Georgia's Police Power Clause (Code Ann. § 2-2502). The latter provides: "The exercise of the police power of the State shall never be abridged, nor so construed as to permit the conduct of business in such manner as to infringe the equal rights of others, or the general well being of the State."

My view is that each of these clauses individually and all three of them in concert render Section 3 of the Act unconstitutional. Georgia's Constitution also very plainly says: "Legislative acts in violation of this Constitution, or the Constitution of the United States, are void, and the Judiciary shall so declare them." Code Ann. § 2-402.

Section 3 of the Act, because of the numerous exemptions contained in other parts of the Act, is applicable only to retail merchants. It creates a crime out of two transactions, if made on successive days, which are individually non-criminal. The crime created by this statute, and which is so stringently limited in its application by all of the exemptions set forth in other parts of the Act, deprives retail merchants of their property rights and their liberty without due process of law as that concept is used in Georgia's Constitution. This criminal prohibition and its limited intended application explicitly stated in the Act violate basic values of property and liberty contained in the substantive concept, as I understand it, of due process of law. Further, this created crime, when examined in the context of the entire Act, has no reasonable relationship to the expressed purpose of the Act: ". . . To promote the health, recreation, welfare, repose and religious liberty of each individual of this state."

Section 3 of the Act operates directly upon and infringes the constitutional rights of property and liberty possessed by retail merchants, it bears no rational relationship to the stated purpose of the Act, and it encroaches upon personal liberty in the guise of promoting a state interest which is quite subordinate to

individual rights of property and liberty. Section 3 therefore exceeds the state's police power limits in that it contravenes the Due Process Clause of the Georgia Constitution.

For similar reasons Section 3 also violates the Equal Protection Clause and the Police Power Clause. It establishes a crime applicable to one "Classification," retail merchants. This classification, considered in the over-all context of the Act with its many exemptions, bears no rational relationship to the establishment of a day of rest for the people of Georgia. In short, the Act, under the guise of establishing a day of rest, is nothing more and nothing less than a "Saturday Closing or Sunday Closing of Retail Businesses Act."

Section 5 of the Act makes the operation of a non-exempt business on both of two days, Saturday and Sunday, a "public nuisance." The operation of such a business on either Saturday or Sunday is not a nuisance, but the operation of the same business on the two consecutive days is declared by Section 5 to be a nuisance subject to being enjoined by the district attorney or any other person or persons.

The General Assembly has declared that a business operated on Saturday but not on Sunday is not a nuisance; if it is operated on Sunday but not on Saturday, it is not a nuisance; but if it is operated on both Saturday and Sunday, then it is a "public nuisance." This declaration exceeds the limits of the state's police power, and, for the same reasons given with respect to Section 3, it violates the Due Process, Equal Protection, and Police Power Clauses of the Georgia Constitution.

For the reasons stated, I concur in the judgment rendered by the court.

JORDAN, Justice, dissenting.

I dissent because in my opinion this Act passes constitutional muster both state and federal.

1. The majority opinion recites the vital portions of the Act and in one majestic swoop concludes that it "is as patently discriminatory as the Act of 1967 (Ga. L. 1967, p. 479 et seq.) which was held unconstitutional in *Hughes v. Reynolds,* 223 Ga. 727 (157 SE2d 746)."

In my opinion we should take a more positive approach to the legislation and measure its constitutional status in the light of more than one previous opinion of this court.

It is axiomatic that in construing the constitutionality of an Act of the legislature every presumption will be made in favor of its constitutionality. Any conflict between the statute and the Constitution must be clear and palpable. As Justice Hall stated in the recent case of *Petty v. Hospital Authority of Douglas County,* 233 Ga. 109, 110 (210 SE2d 317), "This presumption of validity is more than a pious formula to be sanctimoniously repeated at the opening of an opinion and forgotten at the end. It is fortified by the principle that absent a debilitating constitutional flaw in the Act, this court must effectuate the common will expressed in the purpose of the legislation. To go beyond this and review with a hostile eye or an adverse mind is to usurp a power which our Constitution has lodged in our legislature."

Let us then view this Act in the light of this presumption of validity. Candor requires an admission that the Act is far from perfect. It is safe to assume that in this complicated area of public policy as it pertains to the regulation of business in a highly commercialized society that no legislation can be drafted which will mete out perfect and equal justice to each individual in the society. But such perfection is not a constitutional requirement, as courts have many times held.

On the equal protection issue this Act will squarely clear with the Federal Constitution under the opinion of the Supreme Court of the United States in McGowan v. Maryland, 366 U. S. 420 (81 SC 1101, 6 LE2d 393). The same argument advanced by the appellees here was advanced in that case which attempted to strike down a Maryland statute prohibiting the retail sale of merchandise in that state with certain exceptions. The Supreme Court said: "The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion

in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. See Kotch v. Board of River Port Pilot Comm'rs., 330 U. S. 552; Metropolitan Casualty Ins. Co. v. Brownell, 294 U. S. 580; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61; Atchison, T. & S. F. R. Co. v. Matthews, 174 U. S. 96. It would seem that a legislature could reasonably find that the Sunday sale of the exempted commodities was necessary either for the health of the populace or for the enhancement of the recreational atmosphere of the day — that a family which takes a Sunday ride into the country will need gasoline for the automobile and may find pleasant a soft drink or fresh fruit; that those who go to the beach may wish ice cream or some other item normally sold there; that some people will prefer alcoholic beverages or games of chance to add to their relaxation; that newspapers and drug products should always be available to the public. The record is barren of any indication that this apparently reasonable basis does not exist, that the statutory distinctions are invidious, that local tradition and custom might not rationally call for this legislative treatment."

This Act will also square with the equal protection provision of the Georgia Constitution. Code Ann. § 2-102. "The provision of the Georgia Constitution which declares that protection to persons and property shall be impartial and complete is the equivalent of a declaration that no person shall be denied the equal protection of the laws." *Dansby v. Dansby,* 222 Ga. 118, 121 (149 SE2d 252). The rules by which this Act must be tested are set forth in *Georgia So. & Fla. R. Co. v. Adkins,* 156 Ga. 826, 831 (120 SE 610) as follows: "1. The equal-protection clause of the fourteenth amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard,

and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

The appellees, while pointing out some inequalities in the Act, fall far short of showing that the Act is "essentially arbitrary" and rests upon no "reasonable basis," or results in an invidious classification. See *Wilder v. State,* 232 Ga. 404 (207 SE2d 38).

In *Berta v. State,* 223 Ga. 267 (154 SE2d 594), this court upheld the conviction of a person for selling two decks of cards on Sunday, holding that the amendment of Code § 26-6905 by Ga. L. 1949, pp. 1007-1009 (Code Ann. § 26-6915 et seq.) providing for exceptions to the statute, does not violate the equal protection clause of the State Constitution. The opinion relied heavily on McGowan v. Maryland, supra, and other cases. At the next term this court struck down the Sunday Business Activities Act of 1967 in *Hughes v. Reynolds,* 223 Ga. 727 (157 SE2d 746), the case relied upon by the majority opinion. The court in *Hughes* did not cite either *Berta* or McGowan. In my opinion the present Act is different in many material aspects from the Act struck down in *Hughes.* As a matter of fact it corrects many of the deficiencies pointed out in the 1967 Act. Being much broader in scope and purpose, it is immune from this court's critical appraisal of the Act of 1967.

The express purpose of the Act is to promote the health, recreation, welfare, repose and religious liberty of the citizens of Georgia by the closing of certain businesses one day a week. This Act attempts to accomplish these goals, though imperfectly, by providing certain exemptions. All of the stated exemptions deal with works of charity and/or necessity and are stated with sufficient

clarity to be reasonably understood. They allow the operation of businesses essential to the health, welfare, and recreation of the people for seven days a week. To determine the essentiality of businesses needed to accomplish the stated purposes of the Act is a proper legislative function. The legislature has made this classification on a reasonable and not an arbitrary basis. Each exemption can be justified in the light of this scrutiny.

2. The Act does not aid religionists in violation of the State or Federal Constitution. This is not a Sunday "Blue Law." Without regard to any church or religion it provides for a "Common Day of Rest." Such day of rest can be from midnight on Friday to midnight on Saturday or from midnight on Saturday to midnight on Sunday. The court can take judicial notice of the fact that either of these two days is the public day of worship for the vast majority of the citizens of this state. That some isolated sect or individual might choose to worship on a different day does not subject the Act to attack for invidious discrimination.

The trial court erred in holding the Act unconstitutional and I would reverse that judgment.

Therefore, I respectfully dissent.

I am authorized to state that Justice Hall joins in this dissent.