392 A.2d 266

The KROGER CO., a corporation and the Great Atlantic & Pacific Tea Company, Inc., a corporation, Appellants,

v.

O'HARA TOWNSHIP, McCandless Township and Ross Township, Political Subdivisions, Appellees.

The JAMESWAY CORPORATION, Appellant,

v.

CONEWANGO TOWNSHIP, Appellee.

FISHERS BIG WHEEL, INC., a corporation, and Treasure Island Department Stores, Inc., a corporation, Appellants,

v.

Donald WILLIAMS, District Attorney of Lawrence County, Pennsylvania, Lieutenant Arnold Fonseca, Commander, Pennsylvania State Police, New Castle Station, Township of Neshannock, a Municipal Corporation, Township of Union, a Municipal Corporation, and Justice of the Peace, Betty Lou Kradel.

COMMONWEALTH of Pennsylvania

v.

James Thomas GALLO, Appellant.

COMMONWEALTH of Pennsylvania

v.

Gary Joseph DeMARCHIS, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 9, 1978.

Decided Oct. 5, 1978.

Paul A. Manion, Gerald C. Paris, Joseph F. McDonough, Reed, Smith, Shaw & McClay, Pittsburgh, for appellant in No. 134.

Lisle A. Zehner, Zehner, Colville & Zehner, William M. Wycoff, Thorp, Reed & Armstrong, James W. Dunn, Jr., Pittsburgh, for appellees in No. 134.

Albert J. Zangrilli, Jr., Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, for appellant in Nos. 159 & 160.

No appearance for appellee in No. 159.

Robert Engel, Pittsburgh, for appellant in Nos. 160, 161 & 162.

Donald E. Williams, Dist. Atty., New Castle, for appellees in Nos. 160, 161 & 162.

William B. Ball, Harrisburg, amicus curiae, for Pa. Conference on Interchurch Cooperation.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

We are asked in five companion cases to decide the constitutionality of Pennsylvania's Sunday Trading Laws, popularly referred to as the "Blue Laws", which prescribe criminal sanctions for all labor, business, and commercial activities on Sunday, with noted exceptions. The Superior Court held that appellants' constitutional claims were foreclosed by earlier decisions of this Court and of the United States Supreme Court, 243 Pa.Super. 479, 366 A.2d 254 (1976). However, the court was divided on the question of whether appellees, certain municipalities in Allegheny County, discriminated in the enforcement of the laws in violation of the principle outlined by the United States Supreme Court in *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). We granted appellants' petitions for allowance of appeal, and, on November 20, 1976, continued the Superior Court's earlier order staying prosecutions under the Sunday Trading Laws until further order of this Court. We now reverse for the reasons contained herein.

In 1974, appellants, Kroger Company and Great Atlantic and Pacific Tea Company were cited by appellees for violations of the Sunday Trading Laws. Both McCandless and O'Hara Townships initiated formal prosecutions, but Ross Township warned of the possibility for prosecution should appellants remain open on Sunday.

Kroger Company and Great Atlantic & Pacific Tea Company then filed a petition in the Court of Common Pleas of Allegheny County to enjoin appellees from prosecuting un-

der the Sunday Trading Laws. Appellants also sought a stay of any further prosecutions pending adjudication of this case. After a review of the depositions, stipulations, and sundry evidentiary materials, the Court of Common Pleas granted appellants' stay but denied appellants' relief on the merits. The *Kroger Co. v. O'Hara Township*, 123 P.L.J. 275 (C.P.Allegh.Co.1975). Appellant, Jamesway Corporation, based on the belief that our stay order entered in the *Kroger Company* case was of statewide application, opened its store in Conewango Township, Warren County, on Sunday, November 26, 1976. That same day, Jamesway's store manager was charged with ten separate violations of one section of the Sunday Trading Laws. Jamesway filed a complaint in equity in the Court of Common Pleas of Warren County, seeking to enjoin the defendant township from enforcing the Sunday Trading Laws. Appellant, Jamesway, like appellants Kroger and Great Atlantic and Pacific Tea, challenged the constitutionality of the Sunday Trading Laws and also contended that (1) the court order of November 20th was of statewide application, and (2) if not, it was unjust for Jamesway to be prosecuted for violations of the Sunday Trading Laws in one county when this Court stayed similar prosecutions in another county.

The Court of Common Pleas of Warren County denied the injunctive relief and also denied Jamesway's request to stay prosecutions pending appeal. The Superior Court denied similar requests. Jamesway then applied to this Court for similar relief, and on December 17, 1976, this Court granted the relief sought, enjoining the further proceedings and staying those already commenced against appellant's store manager. Appellant's petition for allowance of appeal was subsequently granted.

Appellants, Fishers Big Wheel, Inc. and Treasure Island Department Stores, Inc., like appellant Jamesway opened for Sunday business after this Court's order of November 20, 1976 which stayed prosecutions in the *Kroger Co.*, case. After being cited for sales of merchandise in violation of the Sunday Trading Laws, injunctive and interim relief was

requested but denied by the Court of Common Pleas of Lawrence County and later denied by the Superior Court. On December 11, 1976, we granted the relief sought by Fishers and Treasure Island, and later granted their petition for allowance of appeal.

Appellants, Fishers and Treasure Island, do not raise any issues other than those raised by appellants Kroger Co., Great Atlantic & Pacific Tea Co., and Jamesway Corporation.

The four sections of the Sunday Trading Laws, 18 Pa.C. S.A. §§ 7361–7364 (1973) herein challenged provide as follows:

"§ 7361. Worldly employment or business

"(a) Offense defined.—A person is guilty of a summary offense if he does or performs any worldly employment or business whatsoever on Sunday (works of necessity, charity and wholesome recreation excepted). Fines collected for violations of this section shall be for the use of the Commonwealth.

(b) Exception.—Subsection (a) of this section shall not prohibit:

(1) The dressing of victuals in private families, bakehouses, lodginghouses, inns and other houses of entertainment for the use of sojourners, travellers or strangers.

(2) The sale of newspapers.

(3) Watermen from landing their passengers, or ferrymen from carrying over the water travellers.

(4) Work in connection with the rendering of service by a public utility as defined in the Public Utility Law.

(5) Persons removing with their families.

(6) The delivery of milk or the necessaries of life, before nine o'clock antemeridian, nor after five o'clock postmeridian.

(7) The production and performance of drama and civic light opera for an admission charge by nonprofit corporations in cities of the second class, between the

hours of two o'clock postmeridian and 12 o'clock midnight.

(8) The conducting, staging, managing, operating, performing or engaging in basketball, ice shows and ice hockey for an admission charge in cities of the first and second class, between the hours of two o'clock postmeridian and 12 o'clock midnight.

(c) Definition.—As used in this section 'wholesome recreation' means golf, tennis, boating, swimming, bowling, basketball, picnicking, shooting at inanimate targets and similar healthful or recreational exercises and activities.

"§ 7362. Trading in motor vehicles and trailers

(a) Offenses defined.—A person is guilty of a summary offense if he engages in the business of buying, selling, exchanging, trading, or otherwise dealing in new or used motor vehicles or trailers, on Sunday.

(b) Limitation of action.—Information charging violations of this section may be brought within 72 hours after the commission of the alleged offense and not thereafter.

(c) Repeated offense penalty.—A person who commits a second or any subsequent offense within one year after conviction for the first offense, shall be sentenced to pay a fine not exceeding $200.

(d) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

'Motor vehicle.' Every self-propelled device in, upon or by which any person or property is or may be transported or drawn on a public highway.

'Trailer.' Every vehicle, without motor power, designed to carry property or passengers or designed and used exclusively for living quarters wholly on its own structure, and to be drawn by a motor vehicle.

"§ 7363. Selling certain personal property

(a) Offense defined.—A person is guilty of a summary offense if he engages on Sunday in the business of selling, or sells or offers for sale, on such day, at retail, clothing and wearing apparel, clothing accessories, furniture,

housewares, home, business or office furnishings, household, business or office appliances, hardware, tools, paints, building and lumber supply materials, jewelry, silverware, watches, clocks, luggage, musical instruments and recordings, or toys.

(b) Separate offenses.—Each separate sale or offer to sell shall constitute a separate offense.

(c) Exceptions.—

(1) Subsection (a) of this section shall not apply to novelties, souvenirs and antiques.

(2) No individual who by reason of his religious conviction observes a day other than Sunday as his day of rest and actually refrains from labor or secular business on that day shall be prohibited from selling on Sunday in a business establishment which is closed on such other day the articles specified in subsection (a) of this section.

(d) Limitation of action.—Information charging violations of this section shall be brought within 72 hours after the commission of the alleged offense and not thereafter.

(e) Repeated offense penalty.—A person who commits a second or any subsequent offense within one year after conviction for the first offense shall be sentenced to pay a fine of not exceeding $200.

(f) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

'A day other than Sunday.' Any consecutive 24 hour period.

'Antique.' An item over 100 years old, or ethnographic objects made in traditional aboriginal styles and made at least 50 years prior to their sale.

"§ 7364. Selling or otherwise dealing in fresh meats, produce and groceries

(a) Offense defined.—A person is guilty of a summary offense if he engages in the business of selling or otherwise dealing at retail in fresh meats, produce and groceries on Sunday.

(b) Separate offenses.—Each separate sale, or offer to sell, shall constitute a separate offense.

(c) Exceptions.—Subsection (a) of this section shall not apply to any retail establishment:

(1) employing less than ten persons;

(2) where fresh meats, produce and groceries are offered or sold by the proprietor or members of his immediate family; or

(3) where food is prepared on the premises for human consumption.

(d) Limitation of action.—Information charging violations of this section shall be brought within 72 hours after the commission of the alleged offense and not thereafter.

(e) Repeated offense penalty.—A person who commits a second or any subsequent offense within one year after conviction for the first offense shall be sentenced to pay a fine not exceeding $200.

(Subsection 2 of § 7364 was declared unconstitutional but severable from the remainder of the section in *Goodman v. Kennedy*, 459 Pa. 313, 329 A.2d 224 (1974). Also by the Act of October 25, 1973, P.L. 314, No. 99, § 1, certain provisions of §§ 7361, 7362, 7363, 7364 were suspended, unless otherwise determined by local option. The suspending act now permits after the hour of 1 o'clock P.M. "the conducting, staging, managing, operating or engaging in sport, musical, theatrical and dramatic performances, exhibitions, contests and similar activities." 4 P.S. § 40.1 (Supp.1978–79)).

The question of the constitutionality of state Sunday trading laws has arisen in various states. In twelve of those states those laws or some portion of those laws have been held to be unconstitutional. *Henderson v. Antonacci*, 62 So.2d 5 (Fla.1952); *Rutledge v. Gaylord's Inc.*, 233 Ga. 694, 213 S.E.2d 626 (1975); *Pacesetter Homes, Inc. v. Village of South Holland*, 18 Ill.2d 247, 163 N.E.2d 464 (1958); *Boyer v. Ferguson*, 192 Kan. 607, 389 P.2d 775 (1964); *City of Ashland v. Heck's Inc.*, 407 S.W.2d 421 (Ky.1966); *State v. Target Stores, Inc.*, 279 Minn. 447, 156 N.W.2d 908 (1968);

*Skag-Way Dep't Stores, Inc. v. City of Omaha,* 179 Neb. 707, 140 N.W.2d 28 (1966); *People v. Abrahams,* 40 N.Y.2d 277, 386 N.Y.S.2d 661, 353 N.E.2d 574 (1976); *Spartan's Industries, Inc. v. Oklahoma City,* 498 P.2d 399 (Okl.1972); *Skaggs Drug Centers, Inc. v. Ashley,* 26 Utah 2d 38, 484 P.2d 723 (1971); *County of Spokane v. Valu-Mart, Inc.,* 69 Wash.2d 712, 419 P.2d 993 (1966); *Nation v. Giant Drug Co.,* 396 P.2d 431 (Wyo.1964). In seven other states which have examined their Sunday trading laws, the laws have been upheld as constitutional. *See, e. g., Caiola v. City of Birmingham,* 288 Ala. 486, 262 So.2d 602 (1972); *State v. Fantastic Fair,* 158 Me. 450, 186 A.2d 352, (1962); *Zayre Corp. v. Fenton,* Civil No. S–875 (Mass., April 21, 1977); *Genesco, Inc. v. J. C. Penney Co., Inc.,* 313 So.2d 20 (Miss.1975); *Vornado, Inc. v. Hyland,* 77 N.J. 347, 390 A.2d 606 (1978); *State v. Giant of St. Albans, Inc.,* 128 Vt. 539, 268 A.2d 739 (1970); *Mandell v. Haddon,* 202 Va. 979, 121 S.E.2d 516 (1961).

Since the laws of each state obviously vary, decisions in other jurisdictions may be instructive but of course are not controlling in exercising our obligation to protect the constitutional rights of our citizens under the Pennsylvania Constitution.

Courts have used several different rationales to arrive at their decisions. *See Henderson v. Antonacci, supra* (because no rational basis supports the legislation); *Pacesetter Homes, Inc. v. Village of South Holland, supra,* (as unrelated to the maintenance of quiet and order); *Boyer v. Ferguson, supra,* (not uniformly applied throughout the state); *People v. Abrahams, supra,* (numerous exceptions to Sunday laws have destroyed reasonable relation between laws and their alleged purpose); *Spartan's Indus., Inc. v. Oklahoma City, supra,* (differentiating between dealers of the same product is discriminatory. In litigation arising under the Kansas Sunday Trading Law, *Boyer v. Ferguson, supra,* the Supreme Court of Kansas considered Article 2, Section 17 of the Kansas Constitution a provision similar to Art. III, § 32 of the Pennsylvania Constitution. The Kansas Constitution provides:

"All laws of a *general nature* shall have a *uniform operation* throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the court of the state." (Emphasis added.)

The Court then concluded that the laws violated Article 2, Section 17 of the Kansas Constitution.

Recently, the New Jersey Supreme Court rejected a constitutional challenge to the New Jersey Sunday trading laws provision. The dissenters however were convinced that the equal protection clause of New Jersey's state constitution was violated. *Vornado v. Hyland, supra.*

They pointed out that:

"It is fundamental that all police power legislation must conform to the State constitutional requirement of equal protection of the laws. This basic guarantee, secured by *N.J.Const.* (1947), Art. I, par. 1, is independent from that of the federal constitution." (citations omitted).

The Supreme Court of Oklahoma examined the Sunday Trading ordinance of Oklahoma City which was drafted in conformity with their state's Sunday Closing Laws. *Spartan's Industries, supra.* This ordinance sets forth a general prohibition against Sabbath breaking activities and then exempts over twenty-six different types of businesses including "recreational facilities, amusement centers, fairs and trade shows." *Id.* at 400. In addition, the city ordinance contained a purpose clause which stated that a common day of rest by means of general cessation of work would create an atmosphere in which individuals could relax, and friends and relatives could gather for social occasions. The court found that the "mere recital" of reasons which may have given rise to the ordinance was not controlling on the court. The court then added that the question of arbitrariness was to be resolved by the judiciary:

" . . . The city, in the exercise of its police powers, may subject all occupations within its limits to reasonable regulations, for the protection of the public interests or

for the public welfare; but this power is not an arbitrary one, for the avocations which may be controlled by police regulations is a judicial question." (Citations omitted.) *Id.* at 402.

When the statutory classifications were no longer deemed rationally related to the original state objective, the New York Court of Appeals declared that state's Sunday trading laws unconstitutional. The New York statute, like the Pennsylvania statute, contained individual exceptions which rendered the entire scheme unconstitutional. The court noted:

"While that history demonstrates that no impermissible taint of establishment of religion clings to the statute, it also proves that the statute is not the product of a single, conceptually cohesive legislative plan, but, instead, the consequence of years of patching and filling by the Legislature as it attempted to keep up with rapidly changing societal patterns and needs. Under such circumstances, it was almost inevitable that a time would come when the patchwork no longer made any sense. . . . "
*Id.* 386 N.Y.S.2d at 669, 353 N.E.2d at 581.

Our own Pennsylvania Sunday Trading Laws have been modified in similar patchwork fashion which leave us with a wide variety of statutory prohibitions, permissions, and restrictions on Sunday activity.

Pennsylvania's first Sunday closing law was enacted in 1682. Citizens were to "abstain from their usual and common toil and labour" on the first day of the week, in order to protect against, among other things, "looseness," "oppression," "insolence" and "licentiousness." *See* Charter and Laws of the Province of Pennsylvania 1682–1700, at 107–08. After various revisions throughout the colonial period, the final colonial enactment, the Act of April 22, 1794, was re-enacted almost verbatim into the Act of June 24, 1939. Entitled "Worldly Employment or Business on Sunday, the Act provides in full:

"Whoever does or performs any worldly employment or business whatsoever on the Lord's day, commonly called

Sunday (works of necessity and charity only excepted), or uses or practices any game, hunting, shooting, sport or diversion whatsoever on the same day not authorized by law, shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of four dollars ($4), for the use of the Commonwealth, or, in default of the payment thereof, shall suffer six (6) days' imprisonment.

Nothing herein contained shall be construed to prohibit the dressing of victuals in private families, bakehouses, lodging-houses, inns and other houses of entertainment for the use of sojourners, travellers or strangers, or to hinder watermen from landing their passengers, or ferrymen from carrying over the water travellers, or persons removing with their families on the Lord's day, commonly called Sunday, nor to the delivery of milk or the necessaries of life, before nine of the clock in the forenoon, nor after five of the clock in the afternoon of the same day." Act of June 24, 1939, P.L. 872, § 699.4. *See Chadwick v. Stokes*, 162 F.2d 132, 133 (3d Cir. 1947) (reprinting text of 1939 Act); *Bertera's H. Foodland, Inc. v. Masters*, 428 Pa. 20, 26, 236 A.2d 197, 200 (1967) (reprinting text of 1794 Act.)

This "parent" Act of 1939, however, was not to be the only legislative enactment which impacted on those activities which the citizens of this Commonwealth could engage in on Sunday. For example, in 1935 the showing of motion pictures on Sunday was restricted. *See* 4 P.S. § 60 (1963). The Sunday playing of pool was regulated in 1939, *see* 18 Pa.C.S.A. § 7105 (1973) (formerly 18 P.S. § 4651): the playing of polo in 1935. *See* 4 P.S. § 152 (1963). That same year (1935) beauty culture work was prohibited on Sunday although 16 years later such work could be conducted if for educational purposes. *See* 63 P.S. § 519 (1968). The 1935 law prohibiting beauty culture work put that occupation on an equal footing with barbering, outlawed four years earlier. *See* 63 P.S. § 559 (Supp.1978–79). In 1933, those who earned their living by conducting musical performances *could* work on Sunday. *See* 4 P.S. § 121 (1963).

The two decades following the parent Act's enactment in 1939 saw the passage of further Sunday closing laws. In 1949, extension education was prohibited on Sunday. *See* 24 P.S. § 19–1903 (1962). Boxing and wrestling exhibitions on Sunday were prohibited in 1955. Act of August 31, 1955, P.L. 531, art. II, § 202. Sunday harness racing was outlawed four years later. Act of December 22, 1959, P.L.1978, § 7. In 1959, the law allowing Sunday fishing only during the open season was clarified and reenacted. *See* 30 P.S. § 265 (Supp.1978–79). In 1957, the sale or purchase of motor vehicles and trailers on Sunday was prohibited. *See* 18 Pa.C.S.A. § 7362 (1973). Six years later, forms of entertainment incidental to the showing of motion pictures was prohibited. *See* 4 P.S. § 65 (1963).

The end of this twenty year period did not signal a decrease in the Legislature's interest in enacting Sunday laws. Rather, the enactment of such laws continued apace. The years 1959 and 1961 are particularly noteworthy, for the Legislature's sessions in those two years were marked by major attempts to accommodate the general prohibition against Sunday employment and activity to the needs of the citizens of Pennsylvania; the parent act itself underwent significant change. Newspapers could be sold on Sunday, Act of August 28, 1959, P.L. 777, § 1; work connected with public utility service could be performed, Act of November 19, 1959, P.L. 1530, § 1; drama and civic light opera could be produced and performed for an admission charge but only by certain persons at certain times and in cities of the second class, Act of July 6, 1961, P.L. 514, § 1; basketball, ice shows and ice hockey could be performed and admission charged, but only in cities of the first and second class and only at certain hours, Act of July 10, 1961, P.L. 560, § 1; although the sale of fresh meats and other groceries were prohibited, establishments that were small, family-managed, or prepared food on the premises could open on Sunday, Act of September 27, 1961, P.L. 1695, § 1 (now codified at 18 Pa.C.S.A. § 7364). The parent statute, which was captioned in terms of worldly employment and business but also pro-

hibited various sports and recreational activities, was amended to permit "wholesome recreation" such as golf, bowling, and target shooting. Act of December 16, 1959, P.L. 1874, § 2. And although the parent act's general prohibition against worldly employment or business was maintained, a new provision was added to the Commonwealth's penal laws, specifying a large number of specific items—novelties and souvenirs excepted—the sale of which was prohibited and carried fines of up to $200 and prison sentences of up to thirty days. Act of August 10, 1959, P.L. 660, § 1.

The years since 1961 have brought even further modifications of Pennsylvania's Sunday closing laws. In 1967, persons who for religious convictions closed their business on a day other than Sunday were permitted to open on Sunday. Act of July 19, 1967, P.L. 180, § 1. In 1968, antiques were grouped with novelties and souvenirs as items which could legally be sold on Sunday. Act of May 3, 1968, P.L. 104, § 1. In 1973, all acts or parts of acts were suspended, unless determined otherwise by local option, which prohibited the conducting, staging, managing, operating or engaging in sport, musical, theatrical and dramatic performances, exhibitions, contests and similar activities. Act of October 25, 1973, P.L. 314, No. 99, § 1, 4 P.S. § 40.1 (Supp.1978–79). In spite of the 1973 amendment, the legislature thought it necessary to explicitly allow Sunday harness racing, and boxing and wrestling exhibitions. In 1974, the former prohibition of Sunday harness racing was removed; Sunday racing is now permitted after 1:00 p. m. See 15 P.S. § 2607(c) (Supp.1978–79). Boxing and wrestling exhibitions, once expressly prohibited on Sunday, are now permitted at anytime. See 4 P.S. § 30.202 (Supp.1978–79).

Each of the appellants contends that the Pennsylvania Sunday Trading Laws violate the Pennsylvania Constitution. We agree that the Sunday Trading Laws deny appellants the equal protection guaranteed by our Pennsylvania Constitution and thus today hold the Sunday Trading Laws, 18 Pa.C.S.A. §§ 7361–7364 (1973) to be unconstitutional.

It is one thing to legislate exceptions in order to achieve a coherent statute which furthers the end of a uniform day of rest and recreation for all. However, when a law which prohibits business activity is riddled with exception after exception, a time comes when the general scheme is so diluted that it violates the equal protection of the laws. That time is today.

The equal protection portion of the Pennsylvania Constitution, Art. III, § 32, contains the following language:

"Sec. 32. Certain local and special laws

The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:

1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:

2. Vacating roads, town plats, streets or alleys:

3. Locating or changing county seats, erecting new counties or changing county lines:

4. Erecting new townships or boroughs, changing township lines, borough limits or school districts:

5. Remitting fines, penalties and forfeitures, or refunding moneys legally paid into the treasury:

6. Exempting property from taxation:

7. Regulating labor, trade, mining or manufacturing:

8. Creating corporations, or amending, renewing or extending the charters thereof:

Nor shall the General Assembly indirectly enact any special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed." (Amended and renumbered May 16, 1967 from Art. 3, § 7). (It should be noted that appellants, Kroger and A & P, rely upon Act 3, § 7 which was the predecessor to Art. 3, § 32.)

In the past we have stated that the *content* of this provision is not significantly different from the Equal Protection Clause of the federal Constitution which provides

"nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws." *Baltimore & O. R. Co. v. Dep't of Labor and Industry*, 461 Pa. 68, 334 A.2d 636 (1975), *Bargain City U. S. A. v. Dilworth*, 407 Pa. 129, 179 A.2d 439 (1962). While there may be a correspondence in meaning and purpose between the two, the language of the Pennsylvania Constitution is substantially different from the federal constitution. We are not free to treat that language as though it was not there. Because the Framers of the Pennsylvania Constitution employed these words, the specific language in our constitution cannot be readily dismissed as superfluous.

In *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) the United States Supreme Court concluded that when a right is explicitly or even implicitly guaranteed by the federal Constitution, the Court has a duty to strictly scrutinize any state statute interfering with such a right before declaring such a statute constitutional and the state must show a compelling interest. *San Antonio School Dist. v. Rodriguez, supra; Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). It is the constitutional mandate which requires this more stringent standard, not the social importance of the subject covered by the state legislation. *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

" . . . the answer lies in assessing whether there is a right . . . explicitly or implicitly guaranteed by the Constitution."

*San Antonio School Dist. v. Rodriguez*, 411 U.S. at 33, 93 S.Ct. at 1297, 36 L.Ed.2d at 43.

Although the view of the United States Supreme Court concerning proper guidelines for its interpretation of the federal constitution is not binding upon us in interpreting the Pennsylvania Constitution, we agree that we should be guided by the same principles in interpreting our Constitution. To do otherwise would be to place this Court's subjective value judgment as to what interests of the people

are most important above the value judgment contained in our state Constitution. This we refuse to do.

■ In Article III, Section 32, of the Pennsylvania Constitution we find eight areas *explicitly* mentioned as areas which are not to be encumbered by special laws treating certain citizens differently than others. Specifically, the General Assembly is prohibited from passing any special law "regulating labor, *trade*, mining or manufacturing." We therefore find that it is our judicial duty to carefully examine any law regulating trade.

The justification for the Sunday Trading Laws is to provide Pennsylvanians with a *uniform* day of rest and recreation. This objective is not here challenged. We therefore assume the constitutional propriety of this objective. In an attempt to achieve the objective there is no doubt that the legislature has regulated trade. Section 7361 outlaws all Sunday employment or business whatsoever and then various exceptions are listed. Section 7362 outlaws buying, selling, trading or dealing in motor vehicles and trailers on Sunday. Section 7363 prohibits the business of selling certain property, again with certain exceptions noted. Finally, Section 7364 forbids the business of retail selling of fresh meats, produce and groceries on Sunday with certain exceptions. Certainly, these four sections "regulate trade." Accordingly, we must carefully scrutinize the validity of these special laws.

While the United States Supreme Court has articulated a "strict scrutiny" and a "compelling interest" test for examining state statutes which touch upon explicit or implicit constitutional rights, we need not decide whether that test is the proper one to be applied in determining the constitutionality of the Sunday Trading Laws under the Pennsylvania Constitution. Even applying the test of "fair and substantial relationship," we conclude that the Sunday Trading Laws violate the Pennsylvania Constitution. Concerning the "fair and substantial" test we have said:

"The Equal Protection Clause of *both* constitutions does not deny the State the power to treat different classes of

persons in different ways, but does deny the right to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the particular statute. The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a *fair and substantial relation* to the object of the legislation so that all persons similarly circumstanced shall be treated alike.". (Emphasis added.)

*Moyer v. Phillips*, 462 Pa. 395, 400, 341 A.2d 441, 443 (1973).

(slander and libel exceptions providing these causes of action to survive death of party held unconstitutional.)

The "fair and substantial" test was also articulated in *In re Estate of Cavill*, 459 Pa. 411, 329 A.2d 503 (1974). (Pa. mortmain statute violative of equal protection) and although this case was based upon the United States Fourteenth Amendment we also stated that "[o]ur holding is likewise mandated by the prohibition of special laws in the Pennsylvania Constitution, Pa.Const. art. III, § 32." 459 Pa. at 414, n.7, 329 A.2d at 505, n.7.

 "Fair and substantial" means that the classification must be reasonable and not arbitrary, and the classification must rest upon some ground of difference which has a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike. *In re Estate of Cavill, supra; Moyer v. Phillips, supra.*

The Sunday Trading Laws as a whole must fail when examined in this light. There is no fair and substantial relationship between the objective of providing a uniform day of rest and recreation and in permitting the sale of novelties but not Bibles and bathing suits; in permitting the sale of fresh meat patties but not frozen meat patties; or in permitting the installation of an electric meter but not a T.V. antenna. If the Legislature had said that all stores which employ tall people may open on Sunday, but not stores employing short people, we would surely conclude that such classifications had no fair and substantial relation-

ship to the objective of providing a uniform day of rest and recreation even though such a law would reduce the total amount of Sunday business activity. Likewise, we cannot find a fair and substantial relationship to the objective in permitting the sale of oriental rugs more than fifty years old while prohibiting the sale of newer rugs; in permitting a table manufactured in 1877 to be sold but not one made in 1879; or in permitting the sale of newspapers but not magazines and books.

The objective of providing a uniform day of rest and recreation for all citizens of Pennsylvania is also undermined by the exception which gives to some a right to open their business and sell prohibited merchandise on a Sunday if they close their business on some other day. 18 Pa.C.S.A. § 7363(c)(2). If all citizens do not have the same day off, a *uniform* day of rest and recreation is not provided for all. The exception irrationally assumes that citizens who pray together should stay together for rest and recreation—an invidious suggestion. Moreover, such persons are permitted to sell certain personal property items mentioned in section 7363 but are not permitted to sell other merchandise such as automobiles, fresh meat, produce, or groceries. Additionally, why for instance can a merchant who sells an automobile, a typewriter, a gallon of paint, a hammer or a host of other miscellaneous items be immune from prosecution if no information is filed within seventy-two hours of the sale while another merchant selling an automobile accessory, a boat, dog food, a trip to Europe or a host of other miscellaneous items be subject to prosecution whenever the information is filed?

When reviewing the constitutionality of a statute, it cannot be left to a particular judge's imagination as to whether he can conjure any relationship between a uniform day of rest and recreation and a hodgepodge of classifications. It may be that a computer analyzing the traits peculiar to each of the possible exception classifications allowed under the Trading Laws could ultimately discover some thread of rationality which might relate to providing a uniform day of

rest and recreation. The explicit provisions in the Pennsylvania Constitution, however, prohibiting special laws regulating trade cannot depend upon the speculative results of a possible computer program.

We conclude that the classifications in the Sunday Trading Laws do not bear a fair and substantial relationship to providing a uniform day of rest and recreation to the citizens of Pennsylvania. The Laws therefore are in violation of the Constitutional provision specifically prohibiting any special laws regulating trade contained in Article III, Section 32 of the Pennsylvania Constitution.

Aside from the fact that we agree with the United States Supreme Court that the interests of citizens explicitly or implicitly protected in a constitution are important interests imposing upon us a constitutional obligation to carefully review legislation interfering with those interests, we note that in recent years there is evidence that the United States Supreme Court is more exacting in examining whether state statutory classifications, treating citizens differently, deny those affected rights guaranteed by the federal constitution. *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

One constitutional scholar has noted:

"[The Burger Court has] sporadically articulated some what more demanding criteria [than the Warren Court], in two respects: first, they have suggested that the means, the classification, must *substantially* further the statutory objective; second, there has been the suggestion that the Court will no longer regularly hypothesize *conceivable* state purposes against which to test the rationality of the means—the hypothesizing so familiar in the economic due process area and a concomitant of the Warren Court's old equal protection approach as well." (Emphasis in original.) (Footnotes omitted.)

Gunther, *Constitutional Law: Cases and Materials.* (9th Edition) 1975.

In view of the explicit provision in the Pennsylvania Constitution concerning the regulation of trade, we would not be discharging our obligation to protect the constitutional guarantees were we not to require the statutory classifications to substantially further the statutory objective.

The issue presented in this appeal concerning the constitutionality of the entire Sunday Trading Laws under the Pennsylvania Constitution has not been decided previously by this Court. The United States Supreme Court has reviewed Sunday closing laws in *Two Guys From Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961), and *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In those two cases, the Court upheld, against an equal protection challenge based solely on federal grounds, the constitutionality of specific Sunday closing laws classifications which the Court concluded were reasonably related to the legislative purpose of providing a day of work stoppage and rest. *Two Guys* involved a challenge to the Pennsylvania closing laws, but unlike the present case which attacks the *entire* body of Sunday closing laws under the Pennsylvania Constitution, the federal equal protection challenge in *Two Guys* was directed only against the present 18 Pa.C.S.A. § 7363, the "Grocery Act." In a case subsequent to *Two Guys*, we held that an equal protection challenge to the same section of the Blue Laws was foreclosed by the United States Supreme Court's decision in that case. *Bargain City U. S. A. Inc. v. Dilworth*, 407 Pa. 129, 130, 179 A.2d 439, 441 (1962). Since the present appeal is not limited to testing the constitutionality of § 7363, and in view of the fact that the present appeal is also grounded upon the Pennsylvania Constitution, *Two Guys* is not controlling precedent in this appeal. We also disagree with any intimation in the Superior Court's opinion that appellant's equal protection claim is foreclosed by *Bertera's Hopewell Foodland, Inc. v. Masters*, 428 Pa. 20, 236 A.2d 197 (1967). *Bertera's* dealt not with whether the Blue Laws *as an entity* could be reconciled with constitutional concepts of equal protection, but rather with the three

exceptions to what is now 18 Pa.C.S.A. § 7364, which prohibits the Sunday sale of meats or other groceries.

Appellants also contend (1) that the Sunday Trading Laws violate the due process and equal protection clauses of the federal constitution; (2) that they violate the due process provisions of the Pennsylvania Constitution; and (3) that they are being discriminatorily enforced within various counties. Since we find the Sunday Trading Laws to be violative of the equal protection guarantees of the Pennsylvania Constitution we find it unnecessary to address these other issues.

 Convictions under the Sunday Trading Laws cannot stand and further prosecutions under those laws cannot be initiated in view of the unconstitutionality of those laws.

Judgments of sentence are reversed; and the orders of the Superior Court and of the trial courts denying injunctive relief are vacated and any pending prosecutions or future prosecutions under the Sunday Trading Laws are enjoined.

NIX and LARSEN, JJ., filed concurring opinions.

EAGEN, C. J., filed a dissenting opinion in which POMEROY, J., joined.

NIX, Justice, concurring.

I agree with the majority's conclusion that the Sunday Trading laws presently in force run afoul of Article Three, Section 32 of the Pennsylvania Constitution. These laws, 18 Pa.C.S. §§ 7361–64 (1973), are so riddled with exceptions as to violate the equal protection of the laws as guaranteed by our state Constitution.

I write to emphasize that the instant holding does not question the power of the legislature to hereafter enact Sunday Trading laws which may be compatible with constitutional mandates. The United States Supreme Court as well as this Court have upheld Sunday Trading laws in the past. See *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Two Guys From Harrison—Al-*

*lentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *Bertera's Hopewell Foodland, Inc. v. Masters,* 428 Pa. 20, 236 A.2d 197 (1967); *Bargain City U.S.A., Inc. v. Dilworth,* 407 Pa. 129, 179 A.2d 439 (1962). The result in the cases presently (before us) differs only because these laws, as they have developed over the years, lack "a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike." *Moyer v. Phillips,* 462 Pa. 395, 400–01, 341 A.2d 441, 443 (1973). It is still within the constitutional exercise of its power for the legislature to rewrite these laws so that their defects are cured.

The principle that working people should have one day a week set aside for rest, recreation, and contemplation has "become as much a part of the public policy of the nation as the principles enunciated in the Declaration of Independence." *Bertera's Hopewell Foodland, Inc. v. Masters, supra,* 428 Pa. at 31, 236 A.2d at 203. "[T]he working people of America . . . have struggled long and arduously to achieve a just measure of recompense for their labors and an appropriate period of time for rest and recuperation and for intimate companionship with their families." *Id.* As early as 1848 this Court stated the need for such a day:

"All agree that to the well-being of society, periods of rest are absolutely necessary. To be productive of the required advantage, these periods must recur at stated intervals, so that the mass of which the community is composed, may enjoy a respite from labour at the same time. They may be established by common consent, or, as is conceded, the legislative power of the state may, without impropriety, interfere to fix the time of their stated return and enforce obedience to the direction."

*Specht v. Commonwealth,* 8 Pa. 312, 323 (1848). The majority's action today has not overturned our long history of approval for the principles underlying Sunday Trading laws.

LARSEN, Justice, concurring.

I join in the majority opinion. I wish to point out that I think that all "Blue Laws" are *absolutely* unconstitutional

and hence no legislation can be fashioned to cure this impediment.

EAGEN, Chief Justice, dissenting.

A majority of this Court today concludes that the classification scheme established by Pennsylvania's Sunday Trading Law ("Blue Laws") is so arbitrary and confusing that it bears no fair and substantial relationship to the statute's purpose of providing a uniform day of rest and recreation, and, thus, violates the Commonwealth's guarantee of equal protection of the laws contained in Article III, Section 32 of the Pennsylvania Constitution.

This is not the first time Pennsylvania's "Blue Laws" have been challenged on equal protection grounds. In *Two Guys from Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961), the United States Supreme Court upheld the constitutionality of those sections of the "Blue Laws" regulating the sale of personal property, presently Sections 7361 and 7363, in response to an equal protection claim under the Fourteenth Amendment. The Court concluded a state legislature has the power to prohibit all business activity for the purpose of providing a uniform day of rest and then to make exceptions for certain activities it deems necessary and desirable. Further, the Court determined a legislature has the power to impose heavier penalties on the Sunday sale of selected items sold in quantity by large retail establishments in order to deter those stores from violating the closing laws.

The claim rejected in *Two Guys* is before the Court again today—*viz.*, since statutory exceptions permitting certain businesses to operate on Sunday are not rationally related to the statute's purpose, the statute is rendered arbitrary and capricious and thus violates the equal protection guarantee. In *Two Guys*, the Court evaluated appellant's equal protection claim using the standard enunciated in *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961):

"The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [Citations omitted.]"

One year later this Court, in *Bargain City U. S. A., Inc. v. Dilworth,* 407 Pa. 129, 179 A.2d 439 (1962), rejected another equal protection challenge to the statute's retail sales provision, holding that a challenge under the Fourteenth Amendment was foreclosed by the decision in *Two Guys* and further, holding the "Blue Laws" constitutional under Article III, Section 7[1] of the Pennsylvania Constitution, which prohibits special laws regulating labor or trade.

Next, in *Bertera's Hopewell Foodland, Inc. v. Masters,* 428 Pa. 20, 236 A.2d 197 (1967), this Court considered and rejected the claim that exceptions to the "Grocery Act" provision of the statute, presently Section 7364, violated both federal and state equal protection clauses. Finally, in *Goodman v. Kennedy,* 459 Pa. 313, 329 A.2d 224 (1974), we again upheld the constitutionality of one of the exceptions to the "Grocery Act," presently Section 7364(c)(1), under both the Fourteenth Amendment and the Pennsylvania Constitution.

In each of the earlier constitutional challenges the United States and Pennsylvania Supreme Courts applied the same standard in evaluating the statute's prohibitions and exceptions made thereto—*viz.,* the "rational basis" test, which

1. Pa.Const. art. III, § 7 is now Pa.Const. art. III, § 32, *as amended* and *renumbered* (1967).

requires only that statutory distinctions be reasonably related to the achievement of a legitimate state objective.

The difference in result on the occasion of this most recent challenge to the "Blue Laws" may be attributed to the majority's use of a different standard of review. While it is unclear which of three separate tests discussed by the majority was actually applied in evaluating appellants' equal protection claims, it is clear the majority substituted a standard more demanding than "reasonable relationship to a legitimate state objective."

First, it is suggested that a "strict judicial scrutiny" test is the appropriate standard to apply where the state law under review impinges upon a "fundamental right"—that is, a right explicitly or even implicitly guaranteed by either federal or state constitution.[2] However, the majority fails to identify which substantive "fundamental right" is adversely affected by the "Blue Laws." Instead, it assumes that Pennsylvania's equal protection clause, Article III, Section 32 of the Pennsylvania Constitution, itself amounts to a "fundamental right" and thus, triggers use of the "strict scrutiny" test. It is clear, however, that an equal protection clause cannot be regarded as "fundamental" for purposes of an equal protection analysis since it is not the source of any substantive rights or liberties. The function of such a clause is simply to measure the validity of classifications created by state laws. *See San Antonio School District v. Rodriguez*, 411 U.S. 1, 59, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (Stewart, J., concurring). Thus, "strict judicial scrutiny" of Pennsylvania's Sunday Trading Law is neither required nor appropriate in this case, since the challenged statute has not interfered with free exercise of a "fundamental right."

Next, the majority suggests a standard of review less stringent than "strict scrutiny" but more demanding than

2. Under a "strict scrutiny" standard of review a state must show a compelling interest in order to justify a statutory scheme creating distinctions. This standard is also and most often used where a state creates classifications which are "inherently suspect," such as race or religion. *See, e. g., Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

"rational basis." This intermediate test is used to examine legislative classifications not "inherently suspect" but nevertheless requiring greater scrutiny—for example, those based on sex, illegitimacy and age.[3] Since no such "suspect" distinctions are created by the "Blue Laws," this standard is of questionable relevance in the instant case.

Clearly, the proper standard of review in this case is the "rational basis" test used by the United States Supreme Court in *Two Guys* and restated most recently in *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). In *Dukes,* the Court rejected an equal protection attack on a city ordinance which prohibited the sale of food by pushcart vendors in the French Quarter, but exempted those vendors who had operated in that area for eight years or more. The Court refused to apply a more stringent standard in reviewing the ordinance and stated:

> "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of statutory discriminations . . . States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude." 427 U.S. at 303, 96 S.Ct. at 2516.

This Court has adopted and consistently applied the federal "rational basis" test in reviewing federal and state equal protection claims which do not involve "fundamental interests" or "suspect classifications." *See Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198 (1975); *Baltimore & Ohio Railroad Co. v. Commonwealth of Pennsylvania, Department of Labor & Industry,* 461 Pa. 68, 334 A.2d 636 (1975); *In Re Estate of Cavill,* 459 Pa. 411, 329 A.2d 503 (1974); *Stottlemyer v. Stottlemyer,* 458 Pa. 503, 329 A.2d 892 (1974).

**3.** *See Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (illegitimacy); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (sex). *See also,* G. Gunther, *Individual Rights in Constitutional Law* (2d Ed., 1976), 280–285.

The majority implies that this Court in *Moyer v. Phillips*, 462 Pa. 395, 341 A.2d 441 (1975), approved a more demanding test—*viz.*, that the classification must have a "fair and substantial" relationship to the statutory objective. Since *Moyer* cited both state and federal cases as authority for its standard of review, *see In Re Estate of Cavill, supra; Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920), such an inference is unwarranted. *See* G. Gunther, "In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection" 86 Harv.L.Rev. 1 (1972).

Courts applying the "rational basis" test may not sit as super legislatures which judge the wisdom of statutes or invalidate them because they might have been drafted differently. As stated by Mr. Justice Frankfurter, concurring in *McGowan,* 366 U.S. at 535, 81 S.Ct. at 1194:

> "[E]xcept in the case of a statute whose discriminations are *so* patently *without reason* that no conceivable situation of fact could be found to justify them, the claimant bears the burden of affirmative demonstration that in the actual state of facts which surround its operation, its classifications lack rationality."

The Sunday trading laws are neither arbitrary nor irrational. The Court in *McGowan* and *Two Guys* pointed out that the roots of the Pennsylvania statutes go back for centuries; the current exemptions from the ban on Sunday trading but reflect our legislature's recognition of the development of a complex, pluralistic society. As noted in *McGowan, supra,* relative to special Sunday legislation in general:

> "[E]xceptions, giving the laws resiliency in the course of cultural change, proliferated.[130]

[130] One may trace in these exceptions the evolving habits of life of the people. Compare *State v. Hogreiver,* 152 Ind. 652, 53 N.E. 921, 45 LRA 504 (1899), sustaining a statute specifically prohibiting Sunday baseball, with *Carr v. State,* 175 Ind. 241, 93 N.E. 1071, 32 LRA NS 1190 (1911), sustaining a statute excepting baseball from the

general Sunday prohibition." 366 U.S. at 529, 81 S.Ct. at 1191 (Frankfurter, J., concurring).

This Court has consistently adhered to the rule that an Act of Assembly should not be declared unconstitutional "unless it *clearly, palpably* and *plainly* violates the Constitution." *Singer v. Sheppard,* 464 Pa. 387, 393, 346 A.2d 897, 900 (1975); *Tosto v. Pa. Nursing Home Loan Agency,* 460 Pa. 1, 16, 331 A.2d 198, 205 (1975); *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963).

In point of fact, the statutes abrogated by the majority today are little changed from those upheld by the United States Supreme Court in 1961 and (in part) by this Court in 1962. *See* text of the majority opinion at 115.

Although the various exemptions may be made to appear arbitrary as they have been juxtaposed out of their statutory context in the majority opinion, they are rationally related to a legislatively perceived pattern of preservation of the desired ambiance of Sundays; they are neither arbitrary nor capricious, nor do they sink to the level of invidious discrimination. Since they were passed by the General Assembly as a reasonable exercise of its powers and in good faith, the Sunday trading laws must pass constitutional muster. *Bargain City U.S.A., Inc. v. Dilworth, supra.*

POMEROY, J., joins in this opinion.