**Commonwealth v. Miller**

C.P. of Cambria County, no. 0624-2002.

*Heath Long,* for plaintiff.
*Donna Doblick,* for defendants.

CREANY, *J.,* June 6, 2002—

## FACTUAL BACKGROUND

The various defendants in the above captioned cases, which cases have been consolidated for consideration

by this court, were cited for violating the Pennsylvania Motor Vehicle Code. Many of the defendants were found guilty following hearings before district justices and these convictions were appealed. Various other defendants waived hearing at the district justice level and asked this court to join their cases in this appeal. The provision of the MVC for which the defendants have been cited is section 4529(a), 75 Pa.C.S. §4529(a). This requires all slow moving vehicles, those which by design cannot sustain speeds of 25 miles per hour as well as animal-drawn vehicles, to "display on the rear of the vehicle a reflective slow moving vehicle emblem as specified [in the Pennsylvania Department of Transportation regulations]." The relevant regulation specifies that a slow moving vehicle emblem shall consist of "a fluorescent yellow-orange triangle with a dark, red reflective border . . . ." 67 Pa. Code §165.4 et seq.

In the hearing before this court the defendants agreed to allow the testimony of several of the state troopers by whom they were cited and stipulated that the factual backdrop as to each of the other citations was identical. In effect, the defendants agreed that they were driving horse-drawn buggies on public ways without displaying the required SMV emblem. The testimony by Levi Zook, one of the cited defendants, indicated that all of the defendants are members of the Andy Weaver group of Swartzentruber Amish, a particularly conservative sect of Old Order Amish. He testified, and his testimony was supported by that of Dr. Donald B. Kraybill, an expert called by defendants, that the sect refuses to display the SMV emblem for two reasons, its gaudy color and the symbolic nature of the emblem.

The defendants' expert and the one defendant who testified indicated that the Amish strive to live lives separate from the world, and they witness their beliefs to the world not only in their lifestyles, but in their clothing, their hairstyles, and even in the buggies they drive. To the Amish, the buggy expresses their religious values or identity and it is an expression to the public of their fundamental beliefs or values. The tenets by which various congregations of Old Order Amish live are not necessarily consistent. The members govern their lives by an unwritten code of conduct, the "ordnung," which is passed down from generation to generation and which is periodically reaffirmed by the congregation. Testimony established that this congregation reaffirms its ordnung twice annually.

Although other sects may accept the use of the SMV emblem, members of this sect, or at least members of this congregation of this sect, find its gaudy color offensive and object to placing their faith in a symbol. Dr. Kraybill indicated that conservative sects of Old Order Amish strongly reject symbols or images. As Mr. Zook put it, were he to place a reflective triangle on his buggy it would indicate that he is placing his faith in that symbol rather than in God, as he is required by the ordnung.

The defendants contend that, given the factual backdrop outlined above, the statute and attendant regulation should be declared unconstitutional as applied to them under the provisions of the First Amendment to the United States Constitution and under Article I, Section 3 of the Pennsylvania Constitution.

## LEGAL BACKDROP

### *Standard of Review, Compelling Interest Test, Burden of Proof*

Defendants contend that the Pennsylvania statute and regulation that require the use of the SMV emblem violate the First Amendment to the U.S. Constitution and Article I, Section 3 of the Pennsylvania Constitution as applied to them. The First Amendment to the United States Constitution provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Constitution, Article I, Section 3.

The Pennsylvania Constitution states:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship." Pa. Constitution Article I, Section 3.

The defendants contend that if they are compelled to display the SMV emblem not only will it affect their free exercise of religion, but will also affect their right of expression and of association. Under the Free Exercise

Clause of the First Amendment to the United States Constitution, if only the right of free exercise of religion is affected, the test is merely whether there is a "rational basis" for the statute. If, however, hybrid rights are affected, such as the combination of rights the defendants here contend are implicated, those who are aggrieved are entitled to a heightened level of protection and their claims are entitled to more careful scrutiny. *Chalifoux v. New Caney Independent School District,* 976 F. Supp. 659 (S.D. Tex. 1997). In *Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963), the court reiterated the standard under which First Amendment infringements by state regulation are to be judged: "If, therefore, the decision . . . is to withstand appellant's constitutional challenge, it must be . . . because any incidental burden on the free exercise of appellant's religion may be justified by a 'compelling state interest in the regulation of a subject within the state's constitutional power to regulate . . . .' " "[F]reedom of speech," "freedom of assembly" and "freedom of worship" are susceptible of restriction only to prevent grave and immediate danger to interests which the state may lawfully protect. *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 639, 63 S.Ct. 1178, 87 L.Ed. 1628 (U.S. 1943).

In the present case, the court concludes that the statute and regulation at issue impact hybrid rights. The statute and regulation constitute an underlying burden upon the defendants' freedom of religion, but also impact on their freedom of expression, in that it compels them to display the emblem, and freedom of association, since if one of the defendants were to display the SMV emblem

he would be shunned by other members of the congregation. Even if this court were to conclude that strict scrutiny is not the appropriate standard of review in this case under the United States Constitution, it concludes that the defendants are entitled to review utilizing this same standard under the constitution of the Commonwealth of Pennsylvania. As a general proposition, the Pennsylvania Constitution may afford greater protections than that of its federal counterpart. See *e.g. In re B.,* 482 Pa. 471, 394 A.2d 419 (1978) and *Kroger Company v. O'Hara Township,* 481 Pa. 101, 392 A.2d 266 (1978) (Sunday closing laws found violative of the Pennsylvania Constitution's equal protection provisions although valid under federal law). The language of the relevant provision of the Pennsylvania Constitution insures that citizens of this Commonwealth have "a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences . . . [and] no human authority can, in any case whatever, control or interfere with the rights of conscience . . . ." This language better shields the individual from interference from the state in matters of religion than does the comparable provision of the United States Constitution.

Having determined the appropriate standard of review, the test this court is to apply is set forth as follows: to survive strict scrutiny, the classification must (1) promote a compelling government interest and (2) be narrowly tailored to that interest. *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942). A law is narrowly tailored if it employs the least restrictive means to achieve its goal, and if there is an evidentiary nexus between the government's compelling inter-

est and the classification. *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).

The burden of proving the existence of a substantial interference with the right of free exercise rests upon the religious adherent. *Brynt v. Gomez,* 46 F.3d 948 (9th Cir. 1995). After this threshold showing has been made, the burden then shifts to the government to demonstrate that the challenged regulation furthers a compelling state interest in the least restrictive manner.

The defendants' beliefs must be sincerely held and religious in nature to constitute a sincerely held religious belief. *Africa v. Pennsylvania,* 662 F.2d 1025, 1030 (3d Cir. 1981). The Supreme Court has never established a comprehensive test for determining the "delicate question" of what constitutes a religious belief for purposes of the First Amendment. *Smith v. Board of School Com'rs of Mobile County,* 827 F.2d 684 (11th Cir. 1987). Upon this showing, the Commonwealth of Pennsylvania then has the burden of demonstrating both the act's compelling interest and that its means are narrowly tailored. See *Chabad-Lubavitch of Georgia v. Miller,* 5 F.3d 1383 (11th Cir. 1993).

Accordingly, the constitutionality of the regulation will be sustained only if the government can demonstrate that the act was adopted to serve compelling state interests that are ideologically neutral and that cannot be achieved through means significantly less restrictive of free speech or associational freedoms. *United States v. Frame,* 885 F.2d 1119, 1133 (3d Cir. 1989). (citations omitted) The court must also determine whether the state's countervailing interest is sufficiently compelling to jus-

tify requiring the defendants to display the SMV emblem. *United States v. O'Brien,* 391 U.S. 367, 376-77, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

## DISCUSSION

As indicated in the factual background above, the various defendants have in effect admitted that they failed to comply with the requirements of the statute by refusing to display the SMV emblem when they drove their buggy on public roadways. If they are to avoid application of this statute on the basis of its constitutionality they must, in rebuttal to the Commonwealth's proof of a violation, show that they have sincerely held beliefs that are religious in nature and that the application of the statute and regulation would substantially interfere with these beliefs.

As Levi Zook indicated in his testimony, he and other members of this congregation of Old Order Amish moved to Cambria County from Wayne County, Ohio, approximately two years ago. He and Dr. Kraybill, an expert who appeared in his behalf, indicated that the ordnung, or tenets by which members of this congregation live their lives, are peculiar to this congregation. That ordnung is ratified periodically. Mr. Zook is a buggy maker by profession and indicated that the ordnung addresses, among other things, how buggies should look. He indicated that since about 1965 he has applied 72 inches of retroreflective gray tape outlining the rear of the buggy and has constructed the buggy so that a lantern can be hung from the left rear corner of the buggy. He indicated that he was not aware of the SMV emblem requirement when he moved to Pennsylvania and that if that require-

ment is enforced, he and the other members of his congregation will move back to Ohio. Further, there was testimony that a member of this congregation was incarcerated for a period of time because he was cited and convicted for failing to display the SMV emblem and he refused to pay the fine imposed by the court.

This court heard testimony of the manner in which this congregation of Old Order Amish live. As the court said at the close of testimony, it very much admires the manner in which this group lives and accepts the sincerity with which they live their faith. Members of this congregation have chosen a difficult lifestyle, rejecting all modern conveniences in an effort to witness to the world their commitment to God. In light of all of these facts, and this court's determination that the witness was entirely credible and unfeigned, it concludes that the beliefs by which the members of this congregation live their lives are sincerely held.

This court further accepts that to impose these standards on the congregation does substantially interfere with their beliefs. Dr. Kraybill testified that for Old Order Amish, colors have religious symbolism. Bright colors are considered worldly, flashy, or vain and the members of the congregation use earth tone colors to signify their separation from the world. As they appeared in court all members of the congregation were dressed in a quiet, unobtrusive way, wearing dark brown, gray, black, and blue clothes. Dr. Kraybill further testified that red and orange are antagonistic to their values. Again the court finds this testimony to be credible and convincing. The burden thus shifts to the Commonwealth to justify enforcing requirements that the defendants find oppressive.

The Commonwealth argued that the compelling governmental interest at issue is the safety of both the Amish community and those surrounding this congregation. As previously mentioned, the freedoms at issue here "are susceptible of restriction only to prevent grave and immediate danger to interests which the state may lawfully protect." *Barnette,* op. cit., *supra* at 639. Further, the Commonwealth must demonstrate an evidentiary nexus between the government's compelling interest and the classification. *Croson,* op. cit., *supra* at 473. It cannot be contested that not only the safety of the Amish as they ride in their buggies, but also the safety of those members of the community surrounding the Amish who drive vehicles on the same roadways, is an interest of paramount concern to the state, and the state is justified in promulgating regulations to foster safety. Likewise, it is clear that the point of the regulation is to prevent grave and immediate danger to the Amish and the community that surrounds them. There was no argument by the defendants that fostering safety by some means is inappropriate. The argument they made is that the statute and regulation are not as narrowly tailored to protect that legitimate interest as they should be. Thus, the defendants have effectively conceded that a compelling governmental interest is at issue here. If they have not, then this court nonetheless finds that this is so. The issue then comes down to whether or not the SMV emblem is the least restrictive means to affect this legitimate interest, or to state it differently, whether the state demonstrated that public safety cannot be achieved by proposed alternative means. *Minnesota v. Hershberger,* 444 N.W.2d 282 at 288-89 *(Hershberger I).*

Each side presented experts who addressed the issue of whether the SMV emblem best fostered this governmental interest in safety on public roadways and further whether that public interest could be served by an alternative that was less burdensome on the defendants' religious beliefs. Specifically, each expert addressed whether use of gray reflective tape in the manner as described by Mr. Zook is an acceptable alternative to the use of the SMV emblem.

Mr. Garvey, who testified on behalf of the defendants, opined that the SMV emblem's message has been diluted due to the use of that symbol for other purposes than to designate a slow moving vehicle. He further expressed the opinion that use of the gray reflective tape in conjunction with a lantern provided superior visibility and recognition at night. He did concede, however, that when one is in a position to observe color, the SMV marker is superior. Specifically, during the daytime, the marker was more apparent than the reflective tape. (Transcript of testimony of April 10, 2002, (TT) at p. 69.) Rick Varner, who testified for the Commonwealth, indicated in testimony and in his report that reaction to any stimulus in a traffic setting is a four-step process which includes visibility, identification, decision, and reaction. He conceded that "the gray tape retroreflectivity for nighttime use is equal to or better than the retroreflectivity of the SMV emblem but this statement is only true during non-adverse conditions." (Commonwealth's exhibit, (CX) 2 at p. 6.) He argued, however, that this merely went to visibility and did not impact on any of the other three steps in the driver reaction scenario. Specifically, it did not aid in identification, thus enabling the driver to

make a decision and to react. Further, he pointed out that the orange portion of the SMV emblem provided a great deal of contrast and was especially effective during the daylight and in adverse weather conditions. (CX 2 at p. 6.) He also pointed out that 41 states require the use of the emblem on slow moving vehicles and argued, convincingly, that this uniformity aids in identification and decisionmaking. Further, and most persuasively to this court, he cited to research which revealed that 60.9 percent of all horse and buggy accidents occurred in daylight, approximately .8 percent occurred at dawn and 4 percent occurred at dusk. (Appendix to CX 2.) Thus, approximately 2/3 of all horse and buggy accidents occurred during either low light or full daylight conditions. Both experts have thus agreed that the SMV emblem is the most visible warning device during those hours when two out of every three horse and buggy accidents occur and may best warn of the presence of a horse and buggy on a roadway to enable drivers to see the carriage, identify it and make a decision that could protect the lives and safety of the public, Amish and non-Amish alike.

This court is aware that the burden is on the Commonwealth in proving the validity of enforcing the SMV emblem requirements and does not mean to imply that this burden has fallen back on the defendants. However, defendants' own expert failed to show that in a majority of situations the gray reflective tape is the equivalent of the SMV emblem. This court finds that, on the basis of all testimony offered, the gray reflective tape is not as effective as the SMV emblem over the spectrum of situations and particularly during the majority of time when the effectiveness of one device or another may well pre-

vent injury and death. As a result, this court concludes that the safety of the traveling public, both those within the Amish community and those in the communities surrounding them, cannot be served by this alternative which the Amish suggest is less burdensome on their religious beliefs.

Mr. Zook indicated that the religious convictions of his congregation are so strong that this court's decision may compel them to move from this area. That would be a tragedy to this community and would weigh heavily on this court. As this court stated at the close of testimony, it admires the strength of choice that the members of this congregation have made. The court admires the lifestyles of this community and accepts that the sincere religious beliefs of these individuals have caused them to follow a life that would be much too difficult for many outside that community to adopt. This court, however, does not have legislative authority and, for the reasons stated above, concludes that it is not in a position to exempt these individuals from the effect of this statute and its attendant regulation. If change is to be had it must come from the legislative arm of government.

As a result, this court issues the following:

## ORDER

Wherefore, June 6, 2002, it is hereby ordered and directed that:

(1) Defendants' appeals from summary proceedings in this matter are dismissed.

(2) Each defendant is adjudicated guilty of violating the provisions of the Pennsylvania Motor Vehicle Code,

75 Pa.C.S. §4529(a), and is ordered to pay a fine in the amount of $95;

(3) The defendants have the right to appeal this decision to the Superior Court of Pennsylvania within 30 days, and if an appeal is filed, the execution of sentence will be stayed.